SCOTT YOUNG (10695)
SNOW CHRISTENSEN & MARTINEAU
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145-5000
Telephone: (801) 521-9000
Facsimile: (801) 363-0400
rsy@scmlaw.com
*Attorneys for Defendants*

TANI PACK DOWNING (06122)
JAMI R. BRACKIN (08753)
RYAN N. DOOLEY (17009)
CITY OF ST. GEORGE
175 E. 200 N.
St. George, Utah 84770
tani.downing@sgcity.org
jami.brackin@sgcity.org
ryan.dooley@scgity.org
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SOUTHERN UTAH DRAG STARS, LLC, and MITSKI AVALOX,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ST. GEORGE, CITY COUNCIL OF ST. GEORGE, COUNCILMEMBER JIMMIE HUGHES, COUNCILMEMBER DANIELLE LARKIN, COUNCILMEMBER NATALIE LARSEN, COUNCILMEMBER GREGG MCARTHUR, COUNCILMEMBER MICHELLE TANNER, MAYOR MICHELE RANDALL, and CITY MANAGER JOHN WILLIS,<br><br>Defendants. | **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Civil No. 4:23CV44<br><br>Honorable David Nuffer |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION .............................................................................................................. 1

RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS ........................................... 2

DEFENDANTS' STATEMENT OF ADDITIONAL FACTS ......................................... 6

    St. George City has a long history of hosting events that celebrate the
LGBTQ+ Community ................................................................................................ 6

    Southern Utah Drag Stars' Application for a Special Event Permit ................................. 7

    St. George City institutes Moratorium on New Special Event Permits ............................. 8

    Compliance with Advertising Prohibition and Denial of Permit Applications ................. 9

    The Seed Inc. Brand and Southern Utah Drag Stars Appeal the Denial of their
Permits .................................................................................................................... 9

ARGUMENT ................................................................................................................... 12

    I.     PLAINTIFFS' MOTION IS MOOT ..................................................... 12

    II.    PLAINTIFFS DO NOT HAVE STANDING ......................................... 14

    III.   PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION ............................ 15

        A.    Standard ..................................................................................... 15

            1.    Alters the Status Quo ................................................. 16

            2.    Mandatory Injunctions ............................................... 16

            3.    Affords Movant All Relief ........................................... 17

        B.    Substantial Likelihood of Success on the Merits ......................... 17

            1.    Plaintiffs' Special Event is not protected by the First
Amendment ............................................................... 17

            2.    The Ordinances satisfy First Amendment Scrutiny ..................... 19

|   | i. | The Ordinances are content neutral and, therefore, must withstand "intermediate scrutiny." | 19 |

|   | 3. | The Advertising Ordinance satisfies both intermediate and strict scrutiny. | 20 |
|   |   | i. | Significant Interest | 20 |
|   |   | ii. | Narrowly Tailored | 22 |
|   |   | iii. | Alternative Means of Communication | 22 |

|   | 4. | The Moratorium satisfies both intermediate and strict scrutiny. | 23 |
|   |   | i. | Substantial Interest | 23 |
|   |   | ii. | Narrowly Tailored | 23 |
|   |   | iii. | Alternative Means of Communication | 23 |

|   | 5. | There is no evidence of Pretext | 23 |
|   | 6. | The Special Event Ordinances are not Prior Restraints on protected First Amendment Speech. | 27 |
|   | 7. | The Advertising Prohibition and Moratorium are not Unconstitutionally Overbroad. | 28 |
|   | 8. | The Advertising Prohibition and Moratorium are not Unconstitutionally Vague. | 30 |

C. Irreparable Harm ............................................................................ 32

D. Balance of Harms ........................................................................... 34

E. Public Interest ............................................................................... 35

CONCLUSION ....................................................................................... 35

APPENDIX .............................................................................................. 38

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Aid for Women v. Foulston*, 441 F.3d 1101 (10th Cir. 2006) ........................................ 26

*Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F.Supp.3d 511 (S.D. Tex. 2020).......................... 18

*Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012)........................................................... 16

*Brewer v. City of Albuquerque*, 18 F.4th 1205 (10th Cir. 2021) ............................................ 19, 20

*Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884 (10th Cir. 2008)...................... 12

*City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000) .......................................................... 29

*City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986)........................................ 21, 25, 28

*Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288 (1984)................................................. 17

*Davis v. Mineta*, 302 F.3d 1104 (10th Cir. 2002) .......................................................... 15

*Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276 (10th Cir. 2016)............................................................................................ 15

*Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150 (10th Cir. 2006)....................................... 30, 31

Doe ex rel. Doe v. Yunits, 2000 WL 33162199 (Mass. Super. Ct. 2000), aff'd Doe v. Brockton Sch. Comm., 2000 WL 33342399 (Mass. App. Ct. 2000)................................ 18

*Fleming v. Gutierrez*, 785 F.3d 442 (10th Cir. 2015) ...................................................... 12, 13

*Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123 (1992).......................................... 27

*Globe Newspaper Co. v.Super. Ct. for Norfolk County*, 57 U.S. 596 (1982) .............................. 26

*Grubbs v. Bailes*, 445 F.3d 1275 (10th Cir. 2006)....................................................... 29

*Heideman v. South Salt Lake City*, 348 F.3d 1182 (10th Cir. 2003) .......................... 32, 33, 34, 35

*Jones v. Barnhart*, 349 F.3d 1260 (10th Cir. 2003)....................................................... 24

*Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220 (10th Cir. 2000).............................. 23

*Madsen v. Women's Health Center, Inc.*, 512 U.S. 753 (1994)................................................... 21

*Meyer v. Grant*, 486 U.S. 441 (1988) ...................................................................... 18

*Palmore v. Sidoti*, 466 U.S. 429 (1984) ............................................................................. 26

*Paris Adult Theatre I v. Slaton*, 413 U.S. 49 (1973) ......................................................... 26

*RoDa Drilling Co. v. Siegal*, 552 F.3d 1203 ............................................................... 16, 33

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47 (2006) .................... 17, 18

*Schrier v. University of Colo.*, 427 F.3d 1253 (10th Cir. 2005) ............................................ 15, 16

*Texas v. Johnson*, 491 U.S. 397 (1989) ................................................................................ 18

*U.S. v. Brune*, 767 F.3d 1009 (10th Cir. 2014) .................................................................. 28

*U.S. v. Friday*, 25 P.3d 938 (10th Cir. 2008) ................................................................ 27, 28

*Utah Animal Rights Coalition v. Salt Lake City Corp.*, 271 F.3d 1248 (10th Cir. 2004) ............................................................................................................................ 14

*Verlo v. Martinez*, 820 F.3d 1113 (10th  Cir. 2016) ......................................................... 20

## OTHER AUTHORITIES

City Code § 3-10-1 .............................................................................................. 4, 9, 20

City Code § 3-10-4 ............................................................................................ 14, 19, 31

City Code § 3-10-9 ...................................................................................................... 12

# **INTRODUCTION**

Defendants ("Defendants" or "St. George City") seek denial of Plaintiffs' motion for preliminary injunction.  St. George City has a long history of supporting the LGBTQ+ community, including hosting the annual Pride Festival in its city parks since 2016. Despite this, Plaintiffs Mitski Avalox and Southern Utah Drag Stars claim that the denial of their Special Event Permit Application requesting to hold a drag show in a city park on April 28th was anti-LGBTQ+ and violated the First Amendment. This is not true, and there is no basis for the remedy they seek – a preliminary injunction reversing the denial of their permit and ordering St. George City to allow them to host a drag show in a city park before the end of June.

Plaintiffs' motion fails for three reasons. First, it is moot because the date they requested to hold the event in their permit application (April 28th) has passed. Second, Plaintiffs do not have standing to seek a court order to hold an event in June because they have never filed a permit application seeking to do this. Third, Plaintiffs are not entitled to a preliminary injunction. They do not have a substantial likelihood of prevailing on the merits of this claim because the City Council denied all special event permit applications that violated the advertising provision in the City Code, including a food festival and a trade festival. Plaintiffs contend these other denials were pretext for anti-drag sentiment, but the only proof they submit are emails from four citizens to the Mayor and a podcast where one city councilmember voiced her opposition to drag. These opinions are entitled to the same First Amendment protections Plaintiffs invoke, and they do not show the City Council as a body violated the First Amendment. Moreover, Plaintiffs have not shown irreparable harm. Their permit was denied on April 11[th,] and they could have immediately appealed to State District Court. This would have taken the matter away from the City Council and

potentially allowed them to hold the event on April 28th, but Plaintiffs chose not to do this. Rather, they waited 41 days, until May 23rd, to file suit, and another seven days, until May 30th, to seek this injunction. Thus, their own delay shows they will not be irreparably harmed without the injunction. For these reasons, and others set forth below, Plaintiffs' motion fails.

<u>**RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS**</u>

Defendants respond to the factual assertions and evidence they believe are incorrect or incomplete below.

1.      "The U.S. has recently seen a dramatic increase in hate crimes against LGBTQ+ community and threats to the safety of LGBTQ+ individuals. Utah and St. George in particular are unfortunately no exception to this rising tide of hate."[1]

**Response**: The evidence cited does not support the assertion that St. George City is involved in hate crimes or threats to safety of LGBTQ+ individuals. The Utah Legislature introduced the House and Senate bills referenced, not St. George City. The news article cited references comments at a public hearing, not hate crimes or threats. All citizens and legislators are entitled to voice their views on issues and Plaintiffs' disagreement with those views and/or proposed bills does not render them "hate crimes" or "threats." To the contrary, participation in the democratic process by proposing and advancing bills and speaking at City Council meetings are foundational civic acts that are entitled to the very First Amended protections Plaintiffs say have been violated.

---

[1] Citing Utah HB 11 (2022); SB 16 (2023); SB 93 (2023); HB 209 (2023); Mark Eddington, *What St. George Residents Said About Drag Shows at Divided Council Meeting, Salt Lake Trib.* (Nov. 4, 2022), https://www.sltrib.com/news/politics/2022/11/04/what-st-george-residents-said/. Dkt. #34, p. 3.

2.      "[O]n February 22, the City's Special Events Coordinator, Sarah Reber,

confirmed that Drag Stars had 'a hold on Vernon Worthen'."[2]

**Response**: This email exchange occurred several days before Southern Utah Drag Stars

filed its Special Event Permit Application on March 3, 2023.[3] The full email states:[4]



Ms. Reber expressly asked Ms. Avalox to provide "as much detail as you can" when she filed the

permit. The next emails in the chain show (1) Plaintiffs were requesting to hold the event on

April 28th, and (2) the permit had not been approved and was pending:



---

[2] Dkt. #34, p. 4
[3] Dkt. #34-7, DSTARS00045-47
[4] Dkt. #34-7, DSTARS000032
[5] Dkt. #34-9, DSTARS000136

3.      "A City-employed high school intern reported that twelve of sixteen events with pending applications were "advertising" ahead of their permit approvals."[6]

**Response**: This statement is misleading because it does not separate recurring events, like the Pride Festival, from one-time events, like the event requested by Plaintiffs. City Manager John Willis testified that "On or about March 31, 2023, a majority of the City Council indicated to City Attorney Tani Pack Downing and myself: (a) to strictly comply with the requirements found in City Code § 3-10-1[7] (Advertising for Special Events) et. seq to new events and to otherwise enforce the City Code; and (b) to exempt reoccurring and city sponsored events as the City Council directed staff to prepare an ordinance for the City Council to ratify this decision at the April 6, 2023, City Council Meeting."[8] The recurring events that were exempted from the advertising provision included the annual Pride Festival.[9]

4.      "The intern attached two images related to the event, both from Drag Stars' March 30 post on a platform that enables event planners to solicit vendors. The graphic for Drag Stars' post was not designed to publicize the event to attendees; indeed, it stated that the event's location was "TBD." The intern also submitted images from the eleven other event organizers who had posted "advertisements prior to obtaining permits." [10]

**Response**: Plaintiffs' statement is contradicted by the documents they submitted in support of their appeal to the City Council. In these appeal documents, Plaintiffs stated, "March

---

[6] Dkt. #34, p. 8
[7] City Code § 3-10, Exh. 1
[8] Dkt. #34-7, DSTARS000052-53
[9] *See* List of Recurring Events, Exh. 2.
[10] Dkt. #34, p. 8

30th, SUDS posts advertisement on social media for Allies event."[11] (emphasis added). Thus, prior to filing suit and seeking an injunction, Plaintiffs expressly acknowledged these were advertisements. The email included advertisements for all events, including the following advertisements posted by Southern Utah Drag Stars:

 

     5.     "On March 16, Avalox asked Reber if she could begin advertising the event, and Reber orally agreed."[13]

**Response**: This statement is contradicted by the documents Plaintiffs filed in support of their appeal to the City Council. In the "Executive Summary" submitted by Ms. Avalox, she states, "On March 23rd, I received permission from Special Events Coordinator, Sarah Reber to advertise this event."[14] (emphasis added). She confirmed this in a detailed "Background" that sets forth the timeline of events, stating, "March 23rd, Mitski goes in-person to the city of St. George and asks Sarah Reber if SUDS may begin advertising, she agrees." Ms. Avalox also asserted that this conversation occurred on March 23rd in her April 5th Notice of Appeal, stating, "On March 23rd, I received permission from Special Events Coordinator, Sarah Reber, to

---

[11] Dkt# 34-7, DSTARS000028
[12] Dkt#34-7, DSTARS000059
[13] Dkt#34, p. 8
[14] Dkt#34-7, DSTARS000026

advertise the event."[15] There is no documentation of this alleged conversation on either March 16th or 23rd, and Ms. Reber has expressly denied that she (or St. George) gave any such permission. Ms. Reber testified, "At no time did I authorize, communicate, or indicate to any pending special event applicant that the applicant was allowed, authorized, or given permission to advertise prior to the special event permit being granted and prior to the special event permit being issued. I have searched my emails and found no such correspondence or communication. I do not recall any in person conversation, nor any other communication by text, letter, or 3rd Party regarding advertising approval."[16]

6.     "On March 29, Drag Stars received an email seeking payment for reserving Vernon Worthen Park. On March 31, Avalox visited City Hall to discuss this with Reber, <u>who again assured her that the City was considering her application</u>."[17]

**Response**: Plaintiffs concede that their Special Event Permit application had not been approved and that Ms. Reber represented as much. An email from Marc Mortensen to John Willis dated March 30, 2023 also indicates that the application had not been approved.[18]

## DEFENDANTS' STATEMENT OF ADDITIONAL FACTS

**St. George City has a long history of hosting events that celebrate the LGBTQ+ Community**

1.     St. George City has a long history of hosting and supporting LGBTQ+ events in public spaces. For example, it has hosted the Pride Festival in city parks from 2016-Present.[19]

---

[15] Dkt#34-7, DSTARS000042
[16] Dkt#34-7, DSTARS000042
[17] Dkt#34, p. 9 (emphasis added).
[18] Dkt#34-8, DSTARS000070
[19] https://m.facebook.com/events/968638269902080/;
https://archives.stgeorgeutah.com/news/archive/2016/06/26/hsr-love-reigns-louder-at-st-george-gay-pride-celebration/;

**Southern Utah Drag Stars' Application for a Special Event Permit**

2.      On March 3, 2023, Southern Utah Drag Stars filed an application for a special event

permit from St. George City. The Permit sought permission to host an event on April 28, 2023 at

Vernon Worthen Park[20]:



The Permit Application (1) stated it would not be a recurring event, (2) requested the date of

Friday, April 28th, 2023, (3) did not seek any alternative dates, and (4) did not seek to host an event

in June of 2023.

3.      The permit application contained the following description of the event[21]:



---

2017 Pride Festival Special Event Permit Application, Exh. 3; *See* 2018 Pride Festival Special
Event Permit Application, Exh. 4; *See* 2019 Pride Festival Special Event Permit Application,
Exh. 5; *See* 2019 Pride of Southern Utah After Party Special Event Permit Application, Exh 6
*See* 2019 Pride of Southern Utah After Party Special Event Permit Application Exh. 7; Emails
regarding 2020 Pride Festival, Exh. 8; and *See* 2022 Special Event Permit Application, Exh. 9.
[20] Dkt#34-7, DSTARS000045
[21] Dkt#34-7, DSTARS000047

This description did not provide any detail regarding the proposed drag show. It did not describe any political advocacy or messages, any speech that would accompany performances, the performers' attire, the content of the performances, or the like.

**St. George City institutes Moratorium on New Special Event Permits**

4.       On March 16, 2023, the St. George City Council approved Ordinance No. 2023-03-003, which instituted a 6-month moratorium on the granting of new permits for special events on city property. This moratorium will expire on September 16, 2023.[22] The Preamble in this Ordinance states that the City is concerned because "the use of public facilities for special events has increased in recent years to the point that maintenance of the facilities is becoming more difficult", "the City believes that the public facilities should be available to the public and should not be over encumbered by scheduled special events; "the City desires to balance the use of the facilities by the public with the demand for the facilities by special events; and "the City is seeking to understand the impacts of the community from the amount and types of use of its public facilities, including to residents surrounding the public facilities from the increased traffic, road closures, and noise"; and "in order to properly study the issues, this temporary suspension shall be applicable to events at City owned facilities and not events held at private venues" and "the City believes that the temporary suspension or moratorium on new special event applications is necessary in order to effectively create new provisions which will better balance the needs of the City, the public and the events."[23]

---

[22]*See* Ordinance No. 2023-03-003, Exh. 10
[23] *See* Ordinance No. 2023-03-003, Exh. 10

**Compliance with Advertising Prohibition and Denial of Permit Applications**

5.　　St. George City Manager John Willis testified, "On or about March 31, 2023, a majority of the City Council indicated to Staff to strictly comply with the requirements found in City Code Section 3-10-1 et. seq and to otherwise enforce it."[24]

6.　　That same day, Southern Utah Drag Stars received a letter denying their March 3rd Permit. *See* March 31, 2023 Denial Letter.[25]

7.　　Southern Utah Drag Stars' permit application was not alone in being denied for violating the advertising prohibition. On March 31, 2023, St. George City Special Event Coordinator Sarah Reber sent a letter to Indigo Klabanoff informing her that Seed Inc.'s Special Event Permit Application had been denied for the same reason.[26]

8.　　On March 31, 2023, MakerFest SGU, LLC's application for an event, entitled "1st Night Maker Fest," received a letter informing it that the event application had been denied for the same reason.[27]

**The Seed Inc. Brand and Southern Utah Drag Stars Appeal the Denial of their Permits**

9.　　On April 3, 2023, The Seed Inc. Brand appealed St. George City's decision.[28]

10.　　On April 5, 2023, Southern Utah Drag Stars also appealed.[29] In the Notice of Appeal, Southern Utah Drag Stars did not assert that the denial was due to the content of the event,

---

[24] Dkt#34-7, DSTARS000052-53
[25] Dkt#34-7, DSTARS000036
[26] Dkt#34-7, DSTARS000008
[27] Dkt#34-7, DSTARS000043
[28] Dkt#34-7, DSTARS000007
[29] Dkt#34-7, DSTARS000042

but, that the other applicants "may have received preferential treatment due to personal connections, relationships, or other non-related factors."[30]

11.     MakerFest SGU, LLC did not appeal the denial of its permit.

12.     On April 6, 2023, the St. George City Council approved Ordinance No. 2023-04-001, amending Ordinance No. 2023-03-003 to exempt from the 6-month moratorium those recurring events on the list provided to the City Council on March 21, 2023.[31]

13.     On April 7, 2023, St. George City Recorder Christina Fernandez sent a letter to Indigo Klabanoff informing her that the appeal of the denial of her permit would be heard on April 11, 2023 at 2 p.m.[32]

14.     A similar letter was sent that same day to Ms. Avalox informing her that the City Council would hear Southern Utah Drag Stars' appeal that same day.[33]

15.     On April 10, 2023, St. George City issued a Public Notice of the appeals.[34]

16.     On April 10, 2023, Assistant City Attorney Ryan Dooley filed two briefs with the St. George City Council setting forth the grounds for the denial of the permit applications for The Seed Inc. and Southern Utah Drag Stars.[35] These briefs stated that the City Council had instructed staff to strictly enforce the City Code related to Special Events and that both events had violated the prohibition on advertising before a permit had been issued.[36]

---

[30] *Id.*
[31] *See* Ordinance No. 2023-04- 001, Exh. 11
[32] Dkt#34-7, DSTARS000006
[33] Dkt#34-7, DSTARS000041
[34] Dkt#34-7, DSTARS000001
[35] Dkt#34-7, DSTARS00002-5, DSTARS000020-23
[36] *See Id.*

17.     On April 11, 2023, the St. George City Council heard the appeal of Southern Utah Drag Stars and Indigo Klabanoff.[37]

18.     After hearing from the parties and St. George City, "a motion was made by Councilmember Larkin to overturn the staff's denial of the special event permit for the appellant, The Seed Inc Brand, and direct staff to continue processing the permit."[38] "The motion died for lack of a second."[39] "A motion was made by Councilmember Larsen to affirm the staff's denial of the special event permit for the appellant, The Seed Inc. Brand, and adopt the City's brief for the findings of fact and conclusions of law to support the denial."[40] "The motion was seconded by Councilmember Tanner" and then passed with a 4-1 vote, with Councilmember Larkin voting against the motion.[41]

19.     Following this action on The Seed Inc's appeal, "[a] motion was made by Councilmember Tanner to deny the application for a special event permit for the Our Allies & Community Drag Show, Southern Utah Drag Stars, applicant."[42] City Attorney Tani Downing clarified what the motion should be and "Councilmember Tanner restated her motion to affirm the staff's denial of the special event application."[43] "The motion was seconded by Councilmember Hughes," and it passed with a 4-1 vote, with Councilmember Larkin voting against the motion.[44]

---

[37] *See* 4.11.23 City Council Meeting Minutes, p. 2
[38] 4.11.23 City Council Meeting Minutes, p. 2.
[39] *Id.*
[40] *Id.*
[41] *See Id.*
[42] *See Id.*
[43] *See Id.*
[44] *See Id.*, at p. 5.

20.     Pursuant to City Code § 3-10-9, Appeal Procedures, "An applicant may appeal the city council's decision by seeking judicial review with the district court."

21.     Southern Utah Drag Stars did not appeal to the district court for the State of Utah.

## ARGUMENT

## I.     PLAINTIFFS' MOTION IS MOOT

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."[45] In considering mootness, we ask whether granting a *present* determination of the issues offered will have some effect in the real world."[46] "Thus, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, we must dismiss the case, rather than issue an advisory opinion."[47]

In *Fleming*, the Tenth Circuit held that an appeal of injunction related to the November 2014 election was moot. It explained:

> In this case, a decision affirming or reversing the district court's grant of the preliminary injunction would not have any present-day, real-world effect on the parties because both the election and the effective time period of the injunction have passed. The injunction applied "through the November 2014 elections," and the specific relief sought by the County from this court was the vacation of the injunction prior to the election.[48]

Based on this, the Tenth Circuit held:

> We cannot turn back the clock and create a world in which the County does not have to administer the 2014 election under the strictures of the injunction.

---

[45] *Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 891 (10th Cir. 2008).
[46] *Fleming v. Gutierrez*, 785 F.3d 442, 444 (10th Cir. 2015) (citations omitted) (cleaned up) (emphasis in original).
[47] *Id.*, 445 (citations omitted).
[48] *Id.*, at 445.

> Accordingly, because the election has passed and we cannot grant any effective relief, the appeal is moot.[49]

These principles apply here. Plaintiffs applied for one permit - to hold a drag show on April 28th, 2023. That date has passed and, therefore, any claim seeking an order to allow the requested April 28th event to proceed is moot. As the Tenth Circuit stated, this Court cannot turn back the clock and create a world where the event requested in the application can occur.

There is an exception to mootness for conduct capable of repetition yet evading review. "Under this exception, which courts reserve for "exceptional circumstances," issues under review are not moot if they (1) evade review because the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration, and (2) are capable of repetition, such that there is a reasonable expectation that the same complaining party will be subjected to the same action again."[50] Plaintiffs cannot satisfy this standard. Plaintiffs had 17 days between the City Council's denial of their permit appeal (April 11, 2023) and the requested date of their event (April 28, 2023) to either appeal to state district court, as was their right, or file a federal lawsuit and seek an injunction. Thus, Plaintiffs could have fully litigated this issue prior to April 28th, but chose not to. They waited until May 24th to file suit, nearly one month after the requested event date had passed.

In addition, there is no reasonable expectation that the same injury could occur again. Plaintiffs' permit expressly stated it was for a one-time event and, therefore, by definition it is not capable of repetition. Thus, Plaintiffs' claims related to their permit application are moot.

---

[49] *Id.*
[50] *Id.*, at 445 (cleaned up) (citations omitted).

## II.      PLAINTIFFS DO NOT HAVE STANDING.

"Standing is an essential part of Article III's case-or-controversy requirement."[51] "There are three elements to Article III standing: 1) injury-in-fact; 2) causation; and 3) redressability."[52] "An injury-in-fact is an invasion of a legally protected interest' that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical."[53] "Causation is found upon a showing that the injury is fairly trace[able] to the challenged action of the defendant, rather than some third party not before the court."[54] "Redressability requires the plaintiff to show that it is likely that a favorable court decision will redress the injury to the plaintiff." [55]The burden to establish standing rests on the party invoking federal jurisdiction."[56]

Plaintiffs have never filed an application to hold an event in June. The first time Plaintiffs requested to hold an event in June was in their Complaint.[57] Therefore, there is no pending permit application for the Court to order Defendants to approve.

If the Court finds that the moratorium violates the Constitution, this would only require St. George City to begin accepting new special event permit applications. No event in June would be possible because City Code § 3-10-4 requires that applications be submitted at least 45 days before the requested event. Because the Court does not have authority to order Defendants

---

[51] *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 271 F.3d 1248, 1255 (10th Cir. 2004) (citations omitted).
[52] *Id.* (Citations omitted).
[53] *Id.* (citations omitted) (cleaned up).
[54] *Id.* (citations omitted) (cleaned up).
[55] *Id.* (citations omitted) (cleaned up).
[56] *Id.* (citations omitted) (cleaned up).
[57] Dkt#2, p. 42

to approve a non-existent permit application and order an event in a city park in June, Plaintiffs

do not have standing.

### III.    PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION.

#### A.    Standard

A party seeking a … preliminary injunction bears the burden of demonstrating four

elements: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the

injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary

injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely

affect the public interest."[58] "Because a preliminary injunction is an extraordinary remedy, the

movant's right to relief must be clear and unequivocal."[59]

In addition, Plaintiffs must satisfy a heightened standard because of the relief they seek:

> Because the limited purpose of a preliminary injunction "is merely to preserve the
> relative positions of the parties until a trial on the merits can be held, we have
> "identified the following three types of specifically disfavored preliminary
> injunctions ...:(1) preliminary injunctions that alter the status quo; (2) mandatory
> preliminary injunctions; and (3) preliminary injunctions that afford the movant all
> the relief that it could recover at the conclusion of a full trial on the merits. Such
> disfavored injunctions "must be more closely scrutinized to assure that the
> exigencies of the case support the granting of a remedy that is extraordinary even
> in the normal course.[60]

Plaintiffs' requested relief falls into each of the three categories triggering heightened scrutiny.

"When a preliminary injunction falls into one of these categories, it must be more closely

scrutinized to assure that the exigencies of the case support the granting of a remedy that is

---

[58] *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002) (internal quotation marks and brackets omitted).
[59] *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (citations omitted).
[60] *Schrier v. University of Colo.*, 427 F.3d 1253, 1258-1259 (10th Cir. 2005) (cleaned up).

extraordinary even in the normal course."[61] A district court may not grant a preliminary injunction unless the moving party makes a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms."[62]

### 1.    Alters the Status Quo

"[T]he status quo is the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing."[63] "In determining the status quo for preliminary injunctions, this court looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights."[64] The last uncontested status between the parties was when Plaintiffs' special permit application was pending and had not been denied. Plaintiffs' requested relief confirms that they seek to alter this status quo, as they are "mov[ing] for a preliminary injunction ordering Defendants … to reverse their denial of a special event permit."[65] Thus, heightened scrutiny applies on this basis.

### 2.    Mandatory Injunctions

A mandatory injunction is "an injunction that requires the nonmoving party to take affirmative action – a mandatory preliminary injunction – before a trial on the merits occurs."[66] Plaintiffs are seeking an order that requires defendants to take affirmative action – reversing denial of a special event permit and ordering the event to be held in June. They argue "[t]his is also not a mandatory injunction, as Plaintiffs are seeking that the City's discriminatory behavior be

---

[61] *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012).
[62] *Id.*
[63] *Schrier v. University of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (cleaned up).
[64] *Id.* (citations omitted).
[65] Dkt#34, pg. 4
[66] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citations omitted).

enjoined."[67] This argument is conclusory and ignores the Tenth Circuit's description of a mandatory injunction. By seeking reversal of the permit denial and an order allowing them to hold another event, they are seeking a mandatory injunction.

### 3.    Affords Movant All Relief

The heightened standard is also triggered because an injunction would provide Plaintiffs with all the relief they seek in their complaint. Each item listed in Plaintiffs' Prayer for Relief is either included in, or contingent upon, the injunction.[68] Therefore, the heightened standard should be applied on this basis as well.

### B.    Substantial Likelihood of Success on the Merits

Plaintiffs argue that (1) the advertising provision, and (2) the moratorium violate the First Amendment. Plaintiffs cannot satisfy their heightened burden of showing a substantial likelihood of success on either of these claims and, therefore, an injunction should not issue.

### 1.    Plaintiffs' Special Event is not protected by the First Amendment.

"[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies."[69] It is "the expressive nature of the conduct ... [that] brings that conduct within the First Amendment's protection."[70] To determine "whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, [the Supreme Court] [has] asked whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who

---

[67] Dkt#34, N. 34, p. 11
[68] Dkt#2, p. 42
[69] *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 n. 5 (1984).
[70] *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 65 (2006).

viewed it."[71] Conduct requiring explanation is "strong evidence that the conduct at issue … is not so inherently expressive that it warrants protection."[72]

Plaintiffs argue that their "planned live performance – a drag show – is protected by the First Amendment" because "[d]rag is widely understood to contain a political message, and there is a long history of using drag for protest and advocacy."[73] This is the very type of "speech" that requires explanation. These ideas are not conveyed through the drag performance itself, but must be explained by the performer. This is shown by Ms. Avalox's testimony, "I would say that Drag Star's political and social mission is 'Rebelling by Existing'."[74] If this rebellion was obvious by the show, it would not need to be explained.

The cases Plaintiffs rely upon are irrelevant because they don't involve the expressive conduct at issue here.[75] These cases do not hold that Plaintiffs' requested event constitutes expressive conduct protected by the First Amendment.

Finally, Plaintiffs provided no detail in their permit application about the drag performances and how they amount to protected speech. The permit application does not describe the performances, costumes, speech, or the like. Thus, Plaintiffs failed to provide sufficient detail for the Court to determine whether the drag show requested in their permit constitutes speech

---

[71] *Texas v. Johnson*, 491 U.S. 397, 404 (1989).
[72] *Rumsfeld*, at 66.
[73] Dkt#34, p.12
[74] Dkt#34-6, p. 2
[75] See *Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F.Supp.3d 511, 528 (S.D. Tex. 2020) ("Visibly wearing one's hair in a particular manner is capable of communicating one's religion or heritage.") (emphasis added); *Doe ex rel. Doe v. Yunits*, 2000 WL 33162199 (Mass. Super. Ct. 2000), aff'd *Doe v. Brockton Sch. Comm.*, 2000 WL 33342399 (Mass. App. Ct. 2000) (concerning a student seeking to dress according to gender identity at school); *Meyer v. Grant*, 486 U.S. 441 (1988) concerning a statute prohibiting payment to people circulating voter initiatives).

protected by the First Amendment. Because Plaintiffs bear the burden of establishing their content is protected, this is fatal to their claim.

2. <u>The Ordinances satisfy First Amendment Scrutiny.</u>

Even if the Court finds that the event is protected speech, an injunction should not issue because the advertising ordinance and moratorium satisfy First Amendment standards.

i. *The Ordinances are content neutral and, therefore, must*<br>*withstand "intermediate scrutiny."*

"The magnitude of the burden the government must carry to justify its regulation depends on whether the regulation's restriction on speech is deemed content-based or content-neutral."[76] "Content-based regulations of speech—i.e., regulations "based upon either the content or the subject matter of the speech"—must meet strict scrutiny, whereas content-neutral regulations of speech—i.e., regulations "justified without reference to the content of the regulated speech"— must meet intermediate scrutiny."[77]

Both the advertising provision and moratorium are content neutral. The advertising provision states, "No advertising of a special event shall be permitted until city approval of the special event is granted and a special event permit is issued."[78] Nothing in this is based on the content of the speech. The evidence also shows St. George City applied this section in a content-neutral fashion. Not only was Plaintiffs' permit application denied because they violated the advertising provision, but The Seed Inc Brand's and MakerFest SGU, LLC's permit applications were also denied for the same reason. Thus, the language and application of the advertising

---

[76] *Brewer v. City of Albuquerque*, 18 F.4th 1205, 1220 (10th Cir. 2021).
[77] *Id.* (Citations omitted).
[78] City Code § 3-10-4(C)

provision is content neutral. Similarly, the moratorium applies to all new special event permit applications, regardless of content.

Because the ordinances are content neutral, they must withstand intermediate scrutiny. "[T]o establish that its content-neutral Ordinance is constitutional, the City must show that the Ordinance is narrowly tailored to achieving significant government interests, and that the Ordinance leaves open ample alternative channels of communication."[79] [80]

3. The Advertising Ordinance satisfies both intermediate and strict scrutiny.

i. Significant Interest

"Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities."[81] The purposes of the Special Events Permit Ordinances are:

> The purpose of this chapter is to provide for and encourage temporary events to occur in the city in order to create a sense of community and enhance the quality of life for city residents. It is also the city's intent to promote, protect and assure the safety and convenience of residents and visitors by mitigating potential issues which may occur as a result of the special event. This chapter is adopted to ensure that the special events do not create disturbances, become a nuisance, threaten life, health, and property, disrupt traffic, or threaten or damage private or public property. It is not the intent of this chapter to regulate in any manner the content of speech or infringe upon the right to assemble, except for time, place and manner regulations.[82]

---

[79] *Brewer at 1220*. (Citations omitted)
[80] St. George also believes Plaintiffs have failed to submit evidence of violation of strict scrutiny.
[81] *Verlo v. Martinez*, 820 F.3d 1113, 1129 (10th Cir. 2016) (citations omitted).
[82] City Code § 3-10-1.

These interests are echoed in Ordinances 2023-03-003 and 2023-04-001, which state, "the City of St. George has determined that the use of public facilities for special events has increased in recent years to the point that maintenance of the facilities is becoming more difficult; and . . . the City believes that the public facilities should be available to the public and should not be over encumbered by scheduled special events."[83] Ms. Reber also raised these concerns in her emails with Ms. Avalox:

- "Sandtown [park] is mostly dirt right now from overuse and the restroom area is scheduled to be torn down at the beginning of April"

- "I know we talked about various locations for your event. Due to the Farmer's Market we haven't allowed events in the past the night before since they use that evening to mark and it cuts down on the overuse of the [Vernon Worthen] park."

DSTARS 132, Avalox Declaration Exhibit B. The Supreme Court has acknowledged that these present strong interests for states and municipalities.[84] Plaintiffs do not even address these purposes. Moreover, the City Council raised these concerns long <u>before</u> Plaintiffs filed their permit application on March 3rd, 2023. As early as July 2022, the City Council discussed the challenges posed by special events and the over usage of the parks, such as traffic, parking, noise, expenses, and wear and tear on city property.[85] These issues were discussed in public meetings on 7/14/22, 7/28/22, 8/11/22, 12/8/22, 1/5/23, 3/9/23, 3/16,23, 4/6/23, and 4/8/23.[86]

---

[83] Exh. 10, 11

[84] *See City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 50 (1986) ("A city's "interest in attempting to preserve the quality of urban life is one that must be accorded high respect.");
*Madsen v. Women's Health Center, Inc.,* 512 U.S. 753, 768 (1994) ("The State also has a strong interest in ensuring the public safety and order, in promoting the free flow of traffic on public streets and sidewalks, and in protecting the property rights of all its citizens.")

[85] *See* Decl. of Christina Fernandez, Exh. 12. *See*  Decl. of Sarah Reber, Exh. 13

[86] *See* Id.

### ii.     Narrowly Tailored

The advertising provision is narrowly tailored as applied. It is limited to new special events, and does not apply to recurring events, like the Pride Festival. It does not prohibit advertising, but limits advertising until the new permit is approved. This furthers public order because neither St. George City nor an applicant would want to advertise an event that may not be approved. This would only raise costs and cause confusion for applicants, attendees, citizens, and city officials. In addition, the approval process is not unchecked. Permit applications are first reviewed by the Special Event Review Committee. If they are denied, then the applicant may appeal to the City Council, as Plaintiffs did here. If the appeal is denied, the applicant has an immediate right to appeal to state district court. Plaintiffs chose not to appeal to state court, but they had that option, which would have taken the ultimate decision out of the City Council's hands. Tellingly, Plaintiffs do not present any less restrictive alternatives for the Court to consider. Plaintiffs' failure to propose alternative schemes that address the compelling interests of St. George City is strong evidence that these ordinances are narrowly tailored.

### iii.     Alternative Means of Communication

Plaintiffs do not even address alternative means of communication, but there are many. Plaintiffs are not precluded from dressing in drag in public, attending public meetings or events, participating in other recurring events like the Pride Festival or parades, or the like. In short, Plaintiffs have not submitted evidence satisfying the high standard required for an injunction.

4.     The Moratorium satisfies both intermediate and strict scrutiny.

i.     *Substantial Interest*

The moratorium satisfies the substantial interests set forth in the Special Events permit ordinance. It allows St. George City to determine how to apply the advertising ordinance, and other parts of the code, and to weigh the competing interests between special events and community use, limited resources, environmental impact, etc., as set forth above.

ii.     *Narrowly Tailored*

The moratorium is narrowly tailored because it only concerns permit applications for new special events filed after March 16th. It does not even involve Plaintiffs' application, which was filed on March 3rd. And it does not involve recurring events, such as the Pride Festival. The moratorium expires on September 16th, which is critical because it is in effect during the hot summer months when Plaintiffs themselves have stated it is impracticable to hold outdoor events.

iii.     *Alternative Means of Communication*

Plaintiffs have alternative means of communication, as set forth in Section ii(c) above.

5.     There is no evidence of Pretext.

A plaintiff typically makes a showing of pretext: (1) with evidence that the defendant's stated reason was false; (2) with evidence that the defendant acted contrary to a written policy prescribing the action taken by defendant; or (3) with evidence that the defendant acted contrary to an unwritten policy or company practice.[87] Pretext is revealed by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

---

[87] *See Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[88]

  Plaintiffs claim that St. George City's denial of their permit applications and enactment of the moratorium are pretext to preclude their speech. Plaintiffs have obtained over 800 documents from the City pursuant to GRAMA[89] requests, yet, the only evidence they have submitted to support their position is:

- A series of emails between Mayor Randall and two citizens, Ken and Sherri Kaneversky (with the City Council courtesy copied on the emails).[90]
- An email to Mayor Randall from a citizen named Lianna.[91]
- An email to Councilmember Michelle Tanner from citizen Tim Watro.[92]
- Councilmember Michelle Tanner's appearance on a podcast.[93]

Given the examples of the City's discussion about their compelling interest in the general use of City parks,[94] this evidence falls far short of satisfying the heightened standard for a "substantial likelihood of prevailing on the merits" required for entry of a preliminary injunction. The emails to the mayor from a total of four citizens are irrelevant because neither Mayor Randall nor these citizens voted on the permit denial or moratorium. Moreover, the emails are *de minimis*. According to the United States Census Bureau, St. George City had a population of 102,519 as of July 1, 2022.[95] These four citizens comprise a negligible portion of St. George City's citizens, and they are entitled to the very same First Amendment protections Plaintiffs claim have been

---

[88] *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003).
[89] Declaration of Christina Fernandez, Exh. 12. GRAMA is Utah's Government Records Access and Management Act.
[90] Dkt#34-8, DSTARS000062-67
[91] Dkt#34-8, DSTARS000069
[92] Dkt#34-8, DSTARS000072
[93] Dkt#34-4, DSTARS000153
[94] Declaration of Christina Fernandez, Exh 12
[95] *See* https://www.census.gov/quickfacts/stgeorgecityutah.

violated. Plaintiffs have not submitted any cases holding that one citizen's expression of a protected viewpoint to an elected official is evidence of violation of another citizen's First Amendment rights.

With regard to Councilmember Tanner's statements on the podcast, her viewpoints are also protected under the First Amendment, even if the Plaintiffs disagree with them. The Supreme Court has held:

> It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.... What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.[96]

Councilmember Tanner's statements are not the acts of St. George City. They are her personal opinions. St. George City only acts when the City Council as a whole takes action. Plaintiffs acknowledge this by challenging (1) the Council's denial of the permit, and (2) the Council's enacting of the Moratorium. Councilmember Tanner's vote was not sufficient to enact or enforce these ordinances. Rather, two additional councilmembers were required to vote to deny Plaintiffs' permit application and enact the moratorium. Plaintiffs have not submitted any evidence suggesting the other councilmembers voted to deny their appeal because they disfavored the event. In fact, the April 11th Meeting Minutes – where the City Council heard the appeals of both The Seed Inc. Brand and Plaintiffs – shows that both appeals were denied with 4-1 votes. There is no evidence that these votes were pretext.

Even if the Court concludes this evidence shows the City Council disfavored drag, St. George City's actions would satisfy both intermediate and strict scrutiny. In addition to the other

---

[96] *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986) (citation omitted).

compelling interests, the Supreme Court has long held that municipalities have a compelling interest in protecting children from all kinds of harm.[97] In 1973, the Supreme Court held that "States have a legitimate interest … in regulating exhibition of obscene material in places of public accommodation."[98] Plaintiffs' two declarations show the risk that material that is inappropriate for children may be included in a drag show. Ms. Lipsyncki states, "Importantly, there is nothing inherently sexual about drag performances. Drag can be incorporated into many sorts of performances, whether or not those performances involve adult topics."[99] This statement makes clear that drag performances can be sexual and involve "adult topics." Ms. Lipsyncki continues,[100]

> "Whenever I organize drag performances where children might be present, I apply clear rules regarding performers' attire and conduct. Performers at my family-friendly events do not curse in front of children, nor do they wear any attire more revealing that what can be found in the women's department of any mainstream, family friendly department store. My rules are substantially more restrictive than relevant laws would require."

Ms. Avalox's Declaration contains similar statements. For example, she states,[101]

> The event would have included sets from several music artists, with drag performances from a number of artists interspersed in between. I took care when planning the event to ensure it would be family friendly, without any age-inappropriate, sexual, or bawdy content. I made sure that the performers understood and agreed to these family friendly expectations with respect to costumes, content, dancing, etc.

---

[97] See *Aid for Women v. Foulston*, 441 F.3d 1101, 1119 (10th Cir. 2006) ("the state has a strong parens patriae interest in protecting the best interests of minors."); *Globe Newspaper Co. v.Super. Ct. for Norfolk County*, 57 U.S. 596, 607 (1982) ("[S]afeguarding the physical and psychological well-being of a minor ... is a compelling [interest]."); *Palmore v. Sidoti*, 466 U.S. 429, 433 (1984) ("The State, of course, has a duty of the highest order to protect the interests of minor children, particularly those of tender years.").

[98] *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 69 (1973).

[99] Dkt#34-5, p. 3, par.8

[100] Dkt#34-5, p. 4, par.14

[101] Dkt#34-6, p. 6, par. 17

The need to explain the content and ensure it is appropriate underscores the risk the event poses. Importantly, these details and promises were not included in the permit application or appeal documents. Thus, St. George City would have been justified in rejecting the permit application because it did not ensure that the content of the event satisfied constitutional standards.

> 6.   The Special Event Ordinances are not Prior Restraints on protected First Amendment Speech.

The Supreme Court has held:

> Although there is a "heavy presumption" against the validity of a prior restraint, the Court has recognized that government, in order to regulate competing uses of public forums, may impose a permit requirement on those wishing to hold a march, parade, or rally. Such a scheme, however, must meet certain constitutional requirements. It may not delegate overly broad licensing discretion to a government official. Further, any permit scheme controlling the time, place, and manner of speech must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication.[102]

Plaintiffs argue that the advertising ordinance violates this standard because it is "a total bar on the exercise of commercial speech for applicants that have not yet received a permit and have not been added to the list of favored "city sponsored" events."[103] This is not true. The Tenth Circuit has held that the bare requirement of obtaining a permit is not a "substantial burden" on a First Amendment right.[104] In *Friday*, the plaintiff challenged a permitting process for taking an eagle for Native American religious purposes, and the Tenth Circuit held, "we conclude that the permit process is a reasonable accommodation of Mr. Friday's religious beliefs and is narrowly

---

[102] *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992) (cleaned up).
[103] Dkt#34, p. 24
[104] *See U.S. v. Friday*, 25 P.3d 938 (10th Cir. 2008).

tailored to achieve the government's compelling purposes."[105] In addition, a city's "interest in attempting to preserve the quality of urban life is one that must be accorded high respect."[106]

The advertising provision is not a total bar to commercial speech, but merely a bar to advertising an event before a permit has been approved. Plaintiffs cite no cases holding that a similar advertising prohibition – limited to new special event permit applications, limited to the time prior to permit approval – constitutes an impermissible prior restraint. Rather, they cite three cases that all deal with ordinances limiting door-to-door salespeople. Municipalities are entitled to enact ordinances for the orderly use of limited public resources like parks and a user's ability to advertise their events before they have been approved.

7.    <u>The Advertising Prohibition and Moratorium are not<br>Unconstitutionally Overbroad.</u>

"To succeed in an overbreadth challenge, thereby invalidating all enforcement of the law, a challenger must show that the potential chilling effect on protected expression is both real and substantial."[107] "Finding *some* overbreadth only satisfies part of the inquiry, as the challenger must also show that the law punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep.'"[108] "The Supreme Court has vigorously enforced the requirement that a statute's overbreadth be substantial in both absolute and relative terms."[109] "Thus, even where a fair amount of constitutional speech is implicated, we will not invalidate the statute unless significant imbalance exists."[110]

---

[105] *Id.*, at 974.
[106] *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 50 (1986) (citations omitted).
[107] *U.S. v. Brune*, 767 F.3d 1009, 1018 (10th Cir. 2014) (cleaned up).
[108] *Id.* (Cleaned up) (emphasis in original).
[109] *Id.* (Cleaned up).
[110] *Id.*

Plaintiffs argue that St. George City's permitting process is overbroad "[s]ince permits for special events do not typically issue until a day before or the day of a special event, the Advertising Prohibition effectively functions as a near-total ban on protected speech."[111] This is not true because, as explained above, the permitting process is limited to new special events and allows for an appeal that would take the matter away from the St. George City Council. Advertising is only limited before a permit is issued.

Plaintiffs also argue that the advertising provision is unconstitutional because it has not been enforced previously. The Supreme Court has held that failure to enforce an ordinance in the past does not render an ordinance unenforceable.[112] Moreover, "to prove selective enforcement a plaintiff must provide compelling evidence of other similarly situated persons who were in fact treated differently, because the multiplicity of relevant non-retaliatory variables involved in law enforcement decisions are not readily susceptible to the kind of analysis the courts are competent to undertake in assessing such claims."[113] When St. George City began enforcing the advertising provision, it enforced it against all applicants for new special events permits and the basis for enforcement arose long before Plaintiffs filed their permit application.

Plaintiffs argue that the moratorium is overbroad because "it sweeps in substantially more speech than necessary to achieve the City's stated goals."[114] Plaintiffs do not cite a single case where a court has held a similar moratorium is unconstitutionally overbroad. In addition, Plaintiffs

---

[111] Dkt#34, p. 26

[112] See *City of Erie v. Pap's A.M.*, 529 U.S. 277, 281 (2000) ("That the city made no effort to enforce the ordinance against a production of Equus involving nudity that was being staged in Erie at the time the ordinance became effective does not render the ordinance discriminatory on its face.").

[113] *Grubbs v. Bailes*, 445 F.3d 1275, 1282 (10th Cir. 2006).

[114] Dkt#34, p. 26-27

do not even analyze the ordinance at issue and the reasons it was issued. St. George City enacted the ordinance because "the City believes that a temporary suspension or moratorium on new special event applications is necessary in order to effectively create new provisions which will better balance the needs of the City, the public and the events."[115] More specifically, St. George City "has determined that the use of public facilities for special events has increased in recent years to the point that maintenance of the facilities is becoming more difficult; and … the public facilities should be available to the public and should not be over encumbered by scheduled special events." *Id.* St. George City "desires to balance the use of the facilities by the public with the demand for the facilities by special events." *Id.* The ordinance excluded recurring events, such as the Pride Festival. The moratorium is not permanent but will expire on September 16, 2023. This falls far short of the "significant imbalance" required to invalidate the ordinance for overbreadth.

8.      The Advertising Prohibition and Moratorium are not Unconstitutionally Vague.

"[A] law is 'void for vagueness' if it does not clearly define its prohibitions."[116] "Where a law deals with areas of First Amendment import, there is the additional concern that the uncertain terms will inhibit those First Amendment freedoms, as citizens [will] steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked."[117] "Thus, in the First Amendment context, stricter standards of permissible statutory vagueness may be applied."[118] Nevertheless, "[f]acial challenges are strong medicine, and thus we must be vigilant

---

[115] Ordinance 2023-03-003, Exh. 10
[116] *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1157 (10th Cir. 2006) (citations omitted).
[117] *Id.* (Cleaned up)
[118] *Id.* (Cleaned up).

in applying a most exacting analysis to such claims."[119] "Though perhaps efficient in the abstract, facial challenges risk losing the lessons taught by the particular."[120] "It is for this reason that a party must show, at a minimum, that the challenged law would be vague in the vast majority of its applications; that is, that vagueness permeates the text of the law."[121]

Neither the advertising ordinance nor the moratorium statutes are vague in the vast majority of their applications such that vagueness permeates these provisions. The advertising provision states, "No advertising of a special event shall be permitted until city approval of the special event is granted and a special event permit is issued."[122] Plaintiffs argue this language is vague because:

> The single "advertisement" cited against Plaintiffs was a post on a platform that facilitates vendor contracts and payments, and that listed the location of Plaintiffs' event as "TBD." It is unclear how or why a solicitation for vendors without specifying the event location – as opposed to a public-facing event announcement seeking to attract audience members – constitutes "advertisement." [123]

This argument fails because Plaintiffs admitted these documents were advertisements in their submissions to the City Council. In those documents, Plaintiffs represented, "March 30th, SUDS posts <u>advertisement</u> on social media for Allies event."[124] Moreover, contrary to Plaintiffs' assertions in their motions, one advertisement states the event was to be held on April 28th at JC Snow Park from 5-9 p.m.

---

[119] *Id.* (Cleaned up).
[120] *Id.* (Cleaned up).
[121] *Id.* (Cleaned up).
[122] City Code 3-10-4(C).
[123] Dkt#34, p. 27
[124] Dkt#34-7, DSTARS000038 (emphasis added)

Plaintiffs next argue that it is vague because "one Councilmember questioned whether soliciting vendors actually constituted advertising."[125] One question during a discussion does not satisfy the high standard for vagueness, and Plaintiffs have not pointed to a single case where a court held that an ordinance or statute was unconstitutionally vague based on a single comment by a government official during discussion of the ordinance. If the standard were that easy to satisfy, there would not be a single ordinance that was not void for vagueness.

### C.    Irreparable Harm

"To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."[126] "Irreparable harm is not harm that is merely serious or substantial."[127] "The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."[128]

Plaintiffs rely on *Heideman* to show irreparable harm, a case in which "female dancers who object to the requirement of wearing "G-strings" and "pasties" during their performances, brought suit to enjoin the enforcement of the Ordinance, and filed a motion for a preliminary injunction in district court."[129] While Plaintiffs correctly cite the Tenth Circuit's statement that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," they omit the rest of the Court's analysis. The Tenth Circuit continued,

> It is necessary, however, to consider the specific character of the First Amendment claim. The Supreme Court has observed that the requirement that dancers wear G-strings and pasties "is a minimal restriction in furtherance of the asserted

---

[125] Dkt#34, p. 28
[126] *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (cleaned up).
[127] *Id.* (Cleaned up).
[128] *Id.* (Cleaned up).
[129] *Heideman*, 348 F.3d at 1184.

government interests, and the restriction leaves ample capacity to convey the dancer's erotic message."[130]

The Tenth Circuit then concluded:

> Thus, while the harm to the Plaintiffs may arguably be imminent and irreparable, it is not "great" or substantial." … Because our precedents dictate that we treat alleged First Amendment harms gingerly, we find that this element tips slightly in favor of the Plaintiffs.[131]

Unlike *Heideman*, Plaintiffs are not seeking to enjoin an ordinance that restricts commercial activity in private venues (strip clubs). In fact, Plaintiffs concede that they have been able to host drag shows in private venues.[132] Thus, *Heideman* does not establish irreparable harm here.

Plaintiffs' arguments regarding the moratorium also fall short. In *Heideman*, the Tenth Circuit noted that "[t]he Plaintiffs presented no evidence that enforcement of the Ordinance during the time it will take to litigate this case will have an irreparable effect in the sense of making it difficult or impossible to resume their activities or restore the status quo ante in the event they prevail."[133] The moratorium is set to expire on September 16, 2023, in just three months. Once the moratorium expires, Plaintiffs can submit a new special event permit application.

Plaintiffs' own delay shows they will not suffer irreparable harm. The Tenth Circuit has held that a "delay in seeking preliminary relief cuts against finding irreparable injury."[134] The St. George City Council denied Plaintiffs' appeal of the denial of their permit on April 11, 2023. The permit in question requested a one-time event on April 28th, and the Plaintiffs had an immediate right to appeal to the district court for the State of Utah pursuant to City Code § 3-10-9. Thus,

---

[130] *Id.*, at 1190 (citations omitted).
[131] *Id.*
[132] Dkt#34-6, p. 5, par. 13-15
[133] *Id.*, at 1189.
[134] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (citations omitted).

Plaintiffs could have immediately sought a preliminary injunction in state court and, if they prevailed, held the event requested in their permit. If Plaintiffs truly had suffered irreparable injury from the denial of their permit, they would have immediately appealed in state court. Rather than do this, Plaintiffs waited until after their requested event deadline had passed and filed the present lawsuit on May 23, 2023.[135] [136] Plaintiffs cannot satisfy the high standard for irreparable harm because of their own delay.

### D.    Balance of Harms

"To be entitled to a preliminary injunction, the movant has the burden of showing that the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction."[137]

"The presumption of constitutionality which attaches to every Act of Congress is not merely a factor to be considered in evaluating success on the merits, but an equity to be considered in favor of applicants in balancing hardships."[138] "Although the presumption of constitutionality accorded a municipal ordinance is less than that accorded an Act of Congress, especially in a case involving an explicitly enumerated constitutional right, the ability of a city to enact and enforce measures it deems to be in the public interest is still an equity to be considered in balancing hardships."[139]

---

[135] Plaintiffs waited 41 days after the City Council's denial to file this lawsuit, and 49 days to file their motion for preliminary injunction. This is telling because they are seeking a Court order that makes St. George City host their event by June 30, 2023, just 38 days after Plaintiffs filed their Complaint. Apparently it takes more time to draft and file a 42-page complaint than host an event for 500 people in a city park.

[136] Dkt#2

[137] *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (citations omitted).

[138] *Id.*, at 1190-1191 (citations omitted).

[139] *Id.* (citations omitted).

Plaintiffs have not shown significant harm. They chose not to appeal the permit denial in state court and they never applied for a permit other than the one-time permit for April 28th. The restriction on advertising is limited, as is the moratorium. Plaintiffs have not satisfied their heightened burden on this factor and, therefore, their motion fails.

### E.   Public Interest

"A movant also has the burden of demonstrating that the injunction, if issued, is not adverse to the public interest."[140] With regard to this factor, the Tenth Circuit has stated,

> the democratically elected representatives to the City Council are in a better position than this Court to determine the public interest with respect to questions of social and economic policy. The courts' peculiar function is to say what the law is, not to second-guess democratic determinations of the public interest.[141]

Plaintiffs are asking the Court to take on the role of a Super-City Council, which is not the Court's function. The public has an interest in its elected officials carrying out the duties they have been entrusted with, including administrating special fee permit applications. Plaintiffs have not satisfied their heightened burden on this factor and, therefore, their motion fails.

### CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' motion for a temporary restraining order and preliminary injunction.

DATED this 9th day of June, 2023.

SNOW CHRISTENSEN & MARTINEAU
/s/ Scott Young
Scott Young
*Attorneys for Defendants*

---

[140] *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1191 (10th Cir. 2003) (citations omitted).
[141] *Id.*, at 1191.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 9, 2023, I caused a true and correct copy of the foregoing **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** to be served upon the following:

_/s/   Aliza Murad_