# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, SOUTHERN REGION

| | |
|---|---|
| SOUTHERN UTAH DRAG STARS;<br><br>MITSKI AVALŌX,<br><br>      Plaintiffs,<br><br>  v.<br><br>CITY OF ST. GEORGE;<br><br>CITY COUNCIL OF ST. GEORGE;<br><br>COUNCILMEMBER JIMMIE HUGHES, in his official capacity;<br><br>COUNCILMEMBER DANNIELLE LARKIN in her official capacity;<br><br>COUNCILMEMBER NATALIE LARSEN in her official capacity;<br><br>COUNCILMEMBER GREGG MCARTHUR in his official capacity;<br><br>COUNCILMEMBER MICHELLE TANNER in her official capacity;<br><br>MAYOR MICHELE RANDALL in her official capacity;<br><br>CITY MANAGER JOHN WILLIS in his official capacity,<br><br>      Defendants. | Case No. 4:23-cv-00044-DN-PK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

BACKGROUND ............................................................................................... 3

RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS ..... 5

PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS ............... 7

LEGAL STANDARD .......................................................................................... 12

ARGUMENT .................................................................................................... 13

  I.   Plaintiffs' Claims For Injunctive and Declaratory Relief Are Not Moot
Because Plaintiffs Intend To Continue Performing Drag Shows In St. George .. 14

  II.   Defendants' Decision to Repeal and Replace the Challenged Ordinance Does
Not Moot Plaintiffs' Claims Because the New Ordinance Does Not Cure the
Constitutional Violations. ................................................................................. 16

  III.   Plaintiffs' Claims For Declaratory and Injunctive Relief Are Not Moot
Under the "Capable Of Repetition, Yet Evading Review" Exception. ............... 21

CONCLUSION ................................................................................................. 24

Plaintiffs Southern Utah Drag Stars ("Drag Stars") and Mitski Avalōx (together, "Plaintiffs") submit this brief in opposition to Defendants' Motion for Partial Summary Judgment (ECF 83).[1]

## INTRODUCTION

The parties are before this Court because Defendants wielded the power of their offices to unconstitutionally discriminate against Plaintiffs and their protected speech. Defendants, by their own admission, activated a never-before-used advertising prohibition in the St. George City Code to shut down Plaintiffs' event in response to a slanderous and hateful message from an opponent of Plaintiffs' speech.[2] The record of Defendants' "severe animus" toward Plaintiffs, their protected speech activities, and drag more generally, is both overwhelming[3] and largely undisputed.[4] And the threat that Defendants will exercise their power to strike at Plaintiffs again remains alive and well. This case is equally about the threat of continued discrimination at the hands of the Defendants.

Defendants have now moved for summary judgment dismissing all claims for injunctive and declaratory relief, limiting Plaintiffs' potential remedies to money damages. They base this demand on the following facts: (1) pursuant to the Court's preliminary injunction order, Plaintiffs were able to hold a version of the specific event that Defendants had blocked, precipitating this lawsuit; and (2) Defendants have revised their special events regulations, repealing the provision

---

[1] "Defs.' Mot." refers to Defendants' Motion (ECF No. 83).

[2] *See* ECF No. 60 at 2-3 (explaining that the "impetus" for Defendants enforcing the advertising ordinance was Councilmember Michelle Tanner's complaint based on a message from a "local mental health therapist"); ECF No. 62 at 3 (the message from Lisa Dorn, in which she states she is "disgusted by this Southern Utah Drag group" and slanders Plaintiffs as "sexually abusing kids").

[3] *See* PI Order (ECF No. 63) at 46-50 ("The record evidence is replete with statements and conduct of [Defendants] . . . which demonstrate severe animus towards Drag Stars' protected speech and viewpoint.").

[4] *See id.* at 7 n.15 ("Not many material facts are in actual dispute.").

1

that they invoked to deny Plaintiffs' March 2023 permit application.

Defendants' motion misconstrues the point of this litigation. Plaintiffs intend to put on many more family-friendly, community-building events in St. George—and they are still operating under the cloud of Defendants' manifest intent to drive them out of town and out of business.[5] The revised licensing scheme may have repealed the advertising prohibition originally used to deny Plaintiffs' event permit, but the new provision maintains the same constitutional infirmities and is effectively more subject to misuse than its predecessor. As written, the law gives Defendants unbounded discretion with virtually no indication that they must have a substantive basis for rejecting a permit application. At bottom, Defendants' revised law affords Plaintiffs no protection from Defendants' animus or from their willingness to leverage other aspects of their event licensing regulations to embody that animus in government action.

Indeed, when ruling on Plaintiffs' motion for a preliminary injunction, this Court has already grappled with the problem that is fatal to Defendants' motion:

> [G]iven the thin arguments the City has advanced including that drag shows are not protected speech; that the record evidence demonstrates the City could bar this application based on "an interest in protecting children"; and because of the plentiful evidence of the animus of the Defendants towards Plaintiffs' speech, relief granted Plaintiffs cannot assume there will be a fair review [of] the[ir] application. . . . [I]t is not difficult to foresee additional supervision being necessary to ensure the City complies.[6]

It is, moreover, by no means clear that Defendants' revisions to the City Code constitute improvements. For example, Defendants added a section providing that, whenever a permittee is found to have committed even a *de minimis* rule violation, they "*shall be barred*" from so much

---

[5] *See* Second Avalōx Decl., attached hereto, ¶ 2; *see also* Avalōx Decl. (ECF No. 34-6) ¶ 36 ("If the City's unspoken moratorium against Drag Stars and drag events is allowed to persist, Drag Stars will almost certainly fail as a limited liability corporation in Utah, driven out of business because the City Council seeks to silence Drag Stars's message.").
[6] PI Order (ECF No. 63) at 26 (footnote omitted).

as applying for a permit for *two years*; a second violation results in a *lifetime ban*.[7]  This draconian restriction on speech continues to empower Defendants to permanently shut down events and applicants that they disfavor.  Plaintiffs are considering whether to move this Court for leave to amend their Complaint to address these new threats.

Plaintiffs sought the protection of this Court from Defendants' unconstitutional discrimination.  Their claims for declaratory relief, and for an injunction preventing the City from discriminating against Plaintiffs in connection with "special events permits to host drag performances," are not only still live but still urgent.  Defendants' motion must be denied.

## BACKGROUND

Defendants' motion, and their articulation of the facts, elide at least three crucial points about the record in this case.

*First*, this case was never solely about the event permit that Defendants denied to Plaintiffs last year or the particular advertising provisions of the City Code that they invoked to do it.  Rather, it has been about Defendants' animus toward Plaintiffs and their "campaign to deny Drag Stars a public location for its protected speech."[8]  From the start, Plaintiffs have been seeking this Court's protection to prevent Defendants from continuing to violate their First Amendment rights by discriminating against them and their speech.  Not only is prospective relief necessary to protect Plaintiffs' rights directly, but it is necessary to restore Plaintiffs' reputation with potential business partners who may now see them as magnets for discriminatory enforcement.[9]  It is for these reasons that the Complaint specifically seeks injunctive relief preventing Defendants from

---

[7] St. George City Code § 3-10-13(C) (emphasis added); *see* ECF No. 83-1 at 15.

[8] Compl. (ECF No. 2) ¶ 107.

[9] *See, e.g.*, *id.* ¶ 106 (noting that if Defendants are permitted to deny permits to Plaintiffs, then "vendors, sponsors, and the broader community . . . will take away the message that when Plaintiffs attempt to organize an event in St. George, it is likely to fall through"); *see also* Avalōx Decl. (ECF No. 34-6) ¶ 35.

"unconstitutionally denying Plaintiffs special events permits to host drag performances."[10]

*Second*, this Court's order granting a preliminary injunction against Defendants' discriminatory denial did not rest solely on a finding that the specific since-repealed Code provisions Defendants invoked were unconstitutional. Rather, the Court held, on a largely undisputed record, that:

1. The Advertising Prohibition and the Moratorium were unconstitutionally overbroad and vague;[11]

2. The Advertising Prohibition and the Moratorium were unconstitutional prior restraints on protected speech;[12] and

3. Defendants' efforts to block Plaintiffs from holding their planned event amounted to unconstitutional discrimination against Plaintiffs' protected speech "based on content and viewpoint."[13]

*Third*, and most crucially, neither Plaintiffs' intent to continue hosting drag events in St. George nor Defendants' animus toward Plaintiffs and their protected speech has changed as a result of the Court's preliminary injunction order. Whether through special events permitting— an issue especially likely to recur under the newly-expanded scope of the special events City Code provision[14]—or through other means, there is a significant likelihood that Defendants will continue abusing their power to discriminate against Plaintiffs absent permanent relief from this Court. As such, Plaintiffs' need for this Court's equitable intervention is unabated.

---

[10] Compl. (ECF No. 2) at 42.
[11] PI Order (ECF No. 63) at 27, 54-55.
[12] *Id.* at 37, 55.
[13] *Id.* at 41, 46, 56.
[14] *See* Plaintiffs' Statement of Additional Material Facts, *infra*, ¶ 18.

**RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS**

**Defendants' Statement No. 1** is undisputed.

**Defendants' Statement No. 2:** On March 16, 2023, the St. George City Council approved Ordinance No. 2023-03-003, which instituted a 6-month moratorium on the granting of new permits for special events on city property. This moratorium was set to expire on September 16, 2023.

**Plaintiffs' Response:** Defendants' Statement is imprecise. Ordinance No. 2023-03-003 instituted a 6-month moratorium (the "Moratorium") on the processing of applications for certain special event permits. The Moratorium did not apply to (1) events that had "previously been held within the City of St. George," and (2) events "for which a completed application was received by the City by close of business March 15, 2023."[15] The Moratorium thus did not apply to Plaintiffs' permit application, which was filed on March 7,[16] although it would have barred the processing of any substitute application Plaintiffs could have filed after Defendants denied their application.

**Defendants' Statement No. 3** is undisputed.

**Defendants' Statement No. 4** is undisputed.

**Defendants' Statement No. 5** is undisputed, except that, to the extent it purports to characterize Plaintiffs' Complaint, Plaintiffs state that their Complaint speaks for itself.[17]

---

[15] ECF No. 54-10 at 3 (St. George City Ordinance No. 2023-03-003 § 1.1).
[16] ECF No. 34-7.
[17] Plaintiffs' Complaint appears at ECF No. 2 (not ECF No. 1).

**Defendants' Statement No. 9**[18] is undisputed.

**Defendants' Statement No. 10** is undisputed, except that, to the extent it purports to characterize the Court's order issuing a preliminary injunction order, that order speaks for itself.[19]

**Defendants' Statement No. 11** is undisputed.

**Defendants' Statement No. 12:** On August 31, 2023, St. George City revoked its special event permit ordinance and replaced it with a new ordinance. Importantly, the new ordinance:

A. Does not contain any moratorium on special event permits application.

B. Does not contain an advertising prohibition of any kind.

C. Revamps the approval process by placing authority for approval or denial with the City Manager (§ 3-10-8) after review of the Events Review Committee, which is comprised of 13 city officials, including the City Council, the police department, the fire department, the Special Events Coordinator, and the Parks Department (§3-10-4(b)). *See* Ordinance 2023-017, Def 202-223, Exh. 1.

D. Specifically identifies the various parks and city owned property on which events can be held, and (based on parking availability) the types of events which can take place at each venue. *See Id.*

E. Revamps the appeal process so that appeals are now heard by an independent

---

[18] Defendants' Statement of Undisputed Facts does not contain a Statement No. 6, a Statement No. 7, or a Statement No. 8.

[19] PI Order (ECF No. 63).

administrative law judge, rather than the City Council. *See Id.*, § 3-10-11. An applicant may appeal the administrative law judge's decision to the district court for the State of Utah. *See Id.*

**Plaintiffs' Response:** Plaintiffs do not dispute that Defendants substantially revised the provisions of the St. George City Code governing special event permit applications, and also added new regulations applicable to various other categories of events, through an ordinance passed on August 31, 2023.[20] Plaintiffs do dispute Defendants' improperly argumentative characterization of that ordinance, the overall result of which was to *broaden* the scope of the City's regulation of speech activities in public places and to *stiffen* the penalties for even the most technical rule violations, such as new multi-year and lifetime bans on even applying for future special events.[21] Among other things, Defendants' statement that the City's new limitations on the types of events which may take place on public property are solely "based on parking availability" has no basis in the record.

**Defendants' Statement No. 13:**  Plaintiffs have not filed another special events permit application, and they currently have no such application pending with St. George City.

**Plaintiffs' Response:** Defendants' articulation of the fact is misleading.  Plaintiffs have not yet filed another permit application but do intend to hold special events (and other events) in St. George in the future.

### PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

1. Plaintiff Southern Utah Drag Stars ("Drag Stars") is a grassroots organization which facilitates and organizes inclusive drag shows.  Its owner and sole employee is Plaintiff

---

[20] St. George City Code §§ 3-10-1 *et seq.*; *see* ECF No. 83-1.
[21] *See, e.g.*, St. George City Code § 3-10-13(C); ECF No. 83-1 at 15.

Mitski Avalōx.[22]

2. Plaintiffs have current and future plans to continue organizing inclusive drag shows and other events, including events that may be considered "special events" under the revised special events provision of the City Code.[23]

3. In the summer of 2022, Defendants attempted to revoke permits issued to HBO to hold a drag-related event in a St. George park. After the then City Manager refused to revoke the permit at the last moment, citing the First Amendment rights of the permittees, Defendants fired him, ultimately paying him $625,000 in a wrongful termination settlement.[24]

4. Avalōx founded Drag Stars partly in response to seeing Defendants' publicly hostile reaction to the HBO event, and made it Drag Stars's mission to promote acceptance, visibility, and unity within St. George and other communities in the region, while breaking down barriers and promoting understanding.[25]

5. In January 2023, Councilmember Michelle Tanner attempted to revoke the City's sponsorship of a popular St. George farmer's market because the individuals who organize the farmer's market had, at an event at their separate business, hosted a holiday-themed photo booth organized by Plaintiffs.[26] Tanner explicitly stated that she was taking this action because she believed Plaintiffs' photo booth event "violated community standards"

---

[22] Avalōx Decl. (ECF No. 34-6) ¶¶ 1-2.

[23] *See* Second Avalōx Decl., attached hereto, ¶ 2; St. George City Code § 3-10-2 (defining "special event").

[24] Avalōx Decl. (ECF No. 34-6) ¶¶ 3-4, 13-15; *see* Michelle Tanner (@michelletannerusa), Instagram (June 3, 2022), https://www.instagram.com/p/CeWlnkaphwq/; Bryan Schott, *Settlement for St. George City Manager Forced Out After Drag Show Will Cost Taxpayers $625,000*, Salt Lake Tribune (Oct. 27, 2022), https://www.sltrib.com/news/politics/2022/10/27/settlement-st-george-city/.

[25] Avalōx Decl. (ECF No. 34-6) ¶¶ 3-8.

[26] *Id.* ¶ 14.

and because she was opposed to drag "when it involves children."[27]

6. On March 3, 2023, Plaintiffs applied for a permit to hold a drag event in a St. George city park. The event, titled "Our Allies And Community Drag Show," would have featured family-friendly music and drag performances; Plaintiffs expected as many as 500 or more people to attend. As originally planned, it would have been a major highlight for drag performers and fans in Southern Utah.[28]

7. On March 17, 2023, at 1:53pm, one Lisa Dorn sent Tanner a text message to alert her to Plaintiffs' planned event. Dorn wrote: "I am so disgusted by this Southern Utah Drag group. They are all sexually abusing kids and should be held accountable."[29] This was one of many such negative comments sent disparaging the event.[30]

8. At 2:59pm the same day, Tanner emailed the Mayor, City Manager, and city attorneys complaining of "adult entertainment being performed in front of children," and inquiring whether another venue where Plaintiffs had previously held events was "zoned for this type of entertainment" and whether they needed permits to host drag performances.[31]

9. At 4:27pm the same day, Lisa Dorn again texted Tanner a link to a website called Eventeny which Plaintiffs were using to solicit vendors.[32]

10. At 4:47pm the same day, Councilmember Tanner replied to the email chain she had initiated with City leadership stating that she had "verif[ied] that Southern Utah Drag Stars has violated our ordinance by prematurely advertising" and that she "believe[d] this is also

---

[27] Community Education Channel, *St. George City Council January 5, 2023*, YouTube, at 1:56:10 (Jan. 5, 2023), https://www.youtube.com/watch?v=2FAkHVZ54Hk.
[28] Avalōx Decl. (ECF No. 34-6) ¶¶ 16-17; Lipsyncki Decl. (ECF No. 34-5) ¶ 23.
[29] ECF No. 62-1.
[30] Avalōx Decl. Ex. B (ECF No. 34-8) at 2-9.
[31] ECF 62-2 at 2.
[32] ECF No. 62-1 at 3.

grounds for not issuing their permit."  Tanner's email attached screenshots from Plaintiffs' post on the vendor-facing portion of the Eventeny website.  One of the screenshots displayed the following statement from Plaintiffs:  "Please review the fees attached to being a vendor/sponsor for this event."[33]

11. The City Code provision that Councilmember Tanner was referencing, then-current City Code § 3-10-4(C) (the "Advertising Prohibition"), had *never* been enforced before in any way and had *never* been invoked to deny a special event permit to an applicant.[34]

12. Following Councilmember Tanner's emails questioning Plaintiffs' entitlement to an event permit, City leadership met "to discuss issues that had been raised with Special Events, including the complaint about advertising prior to obtaining a special event permit."[35]

13. City Manager John Willis directed City staff to prepare a list of pending special event applications which were in violation of the Advertising Prohibition.  He then directed City staff to specify which of these events could be considered recurring or City-sponsored events.[36]

14. On March 31, 2023, a majority of the City Council voted to instruct City officials to deny permits to three events—including Plaintiffs' event—for violating the Advertising Prohibition.[37]

15. The City Council also instructed City officials to draft a *post hoc* ordinance for the next City Council meeting that would exempt events identified as recurring or "city-sponsored" from the Advertising Prohibition.  The Council passed such an ordinance—Ordinance

---

[33] *Id.* at 2-3.
[34] ECF No. 54-14 at 4.
[35] ECF No. 60-3 at 3.
[36] *Id.*
[37] *Id.* at 4.

2023-04-001—on April 6, 2023.  In effect, this retroactively exempted a large majority of the list of violators from the Advertising Prohibition.[38]

16. Meanwhile, Plaintiffs had been working with City Special Events Coordinator Sarah Reber to plan the event.  However, on March 31, 2023, the City issued a permit denial letter under Reber's signature stating that Plaintiffs' permit would be denied because they had violated the Advertising Prohibition.[39]  The City Council denied Plaintiffs' appeal of the denial on April 11, 2023.[40]

17. On June 16, 2023, this Court issued an order determining that "[t]he record facts viewed together demonstrate quintessential pretextual discrimination seeking to prevent the Allies Drag Show from occurring," and enjoining Defendants to allow Plaintiffs to hold a version of the event on June 30, 2023.[41]

18. On August 31, 2023, Defendants adopted an ordinance that substantially modified the City Code provisions addressing event permits.[42]  Among many other changes:

(1) The ordinance repealed the advertising provision of the City Code that Defendants invoked to deny a permit to Plaintiffs.[43]

(2) The ordinance expanded the definition of "special event" to include, *inter alia*, any "event which impacts the city by involving the use of or having an impact on public property or facilities, including rights-of-way . . . , or creates public impact through bringing a group of people together in one or more locations for a limited period of

---

[38] *Id.*
[39] Avalōx Decl. (ECF No. 34-6) ¶¶ 18-24; ECF No. 34-7 at 37.
[40] *Id.* ¶¶ 31-32.
[41] PI Order (ECF No. 63) at 50, 57-60.
[42] ECF No. 83-1; *see* City of St. George, *Chapter 10: Special Events* (last visited Jan. 16, 2024), https://stgeorge.municipal.codes/Code/compare@2023-04-13/3-10 (showing changes from the prior version of the Special Events chapter of the City Code).
[43] ECF No. 83-1.

time for a particular activity."[44]

(3) The ordinance added new penalties for violating the Special Events chapter of the City Code.  For example: "Permittees that are found to have violated the terms of this Chapter shall be barred from applying for another Special Event Permit for the same or another event for a period of two years (730 calendar days from the date of the violation).  Events and/or permittees which are barred a second time shall be permanently prohibited from applying for a Special Event Permit."  This ban can only be lifted by the City Council in its discretion, and only upon a showing of "[a] complete separation from the organizing person or entity at fault for the violations."[45]

(4) The ordinance added an entirely new Chapter to the City Code requiring permits for certain events other than special events, such as "Filming Events" (defined as "The recording by film, video, or other medium of live action or landscapes for educational, commercial, or other purposes beyond personal use" other than "filming for a news broadcast").[46]

## LEGAL STANDARD

"Summary judgment is proper only if there is no disputed issue of material fact, and the moving party is entitled to judgment as a matter of law."[47]  The Court "must examine the record in the light most favorable to the party opposing the motion."[48]  Further, the Court "must consider factual inferences tending to show triable issues in the light most favorable to the existence of

---

[44] *Id.* at 7.
[45] *Id.* at 15-16.
[46] *Id.* at 18-22.
[47] *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1286 (10th Cir. 2006) (citing Fed. R. Civ. P. 56(c)).
[48] *Id.*

those issues."[49]

## ARGUMENT

Plaintiffs sought declaratory and injunctive relief concerning the Defendants' "special events licensing scheme"[50] and its specific application that resulted in the denial of Plaintiffs' special events permit application on March 31, 2023, affirmed through the City Defendant's administrative appeals process on April 11, 2023. Defendants assert that they have since revised the regulations at issue and that the revision, taken together with the court-ordered grant of a permit for a single event to Plaintiffs, moots Plaintiffs' claims for declaratory and injunctive relief.

"A case is moot if the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."[51] "The crucial question is whether granting a present determination of the issues offered will have some effect in the real world."[52] "[T]he defendant bears the burden of proving mootness."[53]

Here, Defendants have not met their burden and, even if they had, exceptions to mootness would apply. First, Plaintiffs' claims for injunctive and declaratory relief are not moot because the Court can still grant relief given Plaintiffs' ongoing interest in holding drag performances. Second, the revised ordinance is sufficiently similar to the original such that Defendants' wrongful behavior can be expected to recur. Finally, the revision of the ordinance does not moot Plaintiffs' claims because the issue is capable of repetition but evading review.

For these reasons, the Court should deny Defendants' motion and allow this case to proceed.

---

[49] *Riley v. Brown & Root, Inc.*, 896 F.2d 474, 476 (10th Cir. 1990).
[50] Complaint (ECF No. 2) at 42 ¶ 1.
[51] PI Order (ECF No. 63) at 24 (quotation marks omitted) (quoting *Wyoming v. USDA*, 414 F.3d 1207, 1211 (10th Cir. 2005)).
[52] *Id.* (quoting *Wyoming*, 414 F.3d at 1212).
[53] *WildEarth Guardians v. Pub. Serv. Co. of Colorado*, 690 F.3d 1174, 1183 (10th Cir. 2012).

I.  **Plaintiffs' Claims For Injunctive and Declaratory Relief Are Not Moot Because Plaintiffs Intend To Continue Performing Drag Shows In St. George.**

Defendants' motion repeatedly misconstrues Plaintiffs' complaint as concerning only a single drag performance, but the Complaint alleges Plaintiffs' ongoing intent to organize "future drag performances" as well.[54]  A lawsuit is moot only "where the court cannot possibly grant relief."[55]  Here, Plaintiffs remain committed to celebrating and affirming the LGBTQ+ community in St. George through hosting future drag performances,[56] and Defendants have demonstrated that they will go to extraordinary lengths to discriminate against Plaintiffs' speech. Defendants' arguments that Plaintiffs' claims for injunctive and declaratory relief are "moot solely because defendants granted [plaintiffs'] permit application and [because Plaintiffs held their event on June 30, 2023[57]] is based on a narrow view of the mootness doctrine, which the Supreme Court has rejected."[58]  Instead, the Supreme Court and the Tenth Circuit have held that "even a partial remedy is sufficient to prevent a case from being moot."[59]  Further, "an expanded notion of standing" applies in First Amendment matters like this one.[60]  Plaintiffs' requested permanent

---

[54] Complaint (ECF No. 2) at 28 ¶ 119.

[55] *Rajala v. Gardner*, 709 F.3d 1031, 1036 (10th Cir. 2013).

[56] Second Avalōx Decl. (Ex. 1)  ¶ 2.

[57] *See* Defs.' Mot. (ECF No. 83) at 9-10.

[58] *The Cherokee Nation W. v. U.S. Army Corps of Engineers*, 2016 WL 4548441, at *3 (N.D. Okla. Aug. 31, 2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

[59] *Rajala*, 709 F.3d at 1036 (quotation marks omitted) (quoting *Calderon v. Moore*, 518 U.S. 149, 150 (1996)).

[60] *See, e.g., O'Connor v. City & Cnty. of Denver*, 894 F.2d 1210, 1214 (10th Cir. 1990) ("Within the First Amendment context, courts properly apply an expanded notion of standing to determine who may institute the asserted claim for relief. '[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license.'" (quoting *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755 (1988))); *ACORN v. City of Tulsa, Okl.*, 835 F.2d 735, 738 (10th Cir. 1987) ("'[W]ithin the context of the First Amendment, the Court has enunciated other concerns that justify a lessening of prudential limitations on standing.' Thus, there are circumstances in which parties

injunction and declaratory relief will provide necessary safeguards to protect against Defendants' discriminatory actions when Plaintiffs apply to host future drag performances.  Accordingly, plaintiffs' claims for injunctive and declaratory relief are not moot.

It is irrelevant to the mootness inquiry that "Plaintiffs have not filed any additional permit applications and have no such applications pending" at this moment.[61]  Defendants bear "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur," and they cannot meet that burden by ignoring the continuing threat to Plaintiffs' concrete interest in holding future drag performances.[62]  As long as a new ordinance "disadvantages [a Plaintiff] in the same fundamental way," even if it "may disadvantage them to a lesser degree than the old one," the case is not moot.[63]  It does not "matter that the new ordinance differs in certain respects from the old one."[64]  As further explained below, Plaintiffs will still be disadvantaged under the new special events licensing scheme, and the injunctive and declaratory relief they request would safeguard their continued interest in expressing their protected speech.  The continued "availability" of these remedies requires denying Defendants' motion.[65]

Defendants have cited no authority supporting their proposition that Plaintiffs' continued interest in holding events in St. George is moot.  *Utah Animal Rights Coalition v. Salt Lake City Corp*,[66] was a challenge to a permitting scheme by a party seeking to protest during the Olympics.

---

who have not actually engaged in protected activity are allowed to challenge a statute that inhibits others from engaging in protected speech or expression . . . [Plaintiff] had suffered an actual injury when its representatives were cited for violating the ordinance, and it suffered a threatened injury because the city stood ready to enforce the ordinance again." (internal citations omitted)).

[61] Defs.' Mot. (ECF No. 83) at 10-11.

[62] *Friends of the Earth*, 528 U.S. at 170.

[63] *Ne. Fla. Chapter of Assoc. Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 662-63 (1993) ("*Ne. Fla.*") .

[64] *Id.*

[65] *Calderon*, 518 U.S. at 150.

[66] 371 F.3d 1248 (10th Cir. 2004).

By the time the ordinance had been amended, the Olympics had already taken place, and thus the plaintiffs could not possibly complete their objective of protesting during the Olympics. [67] Plaintiffs, by contrast, remain active in St. George and seek to hold more events and more drag performances there in the future. Any further restrictions on their First Amendment rights thus remain a constitutional concern.

## II. Defendants' Decision to Repeal and Replace the Challenged Ordinance Does Not Moot Plaintiffs' Claims Because the New Ordinance Does Not Cure the Constitutional Violations.

Defendants argue that any claims related to the City Code provisions are now moot because the City of St. George revised its special events ordinance subsequent to the entry of the preliminary injunction in this matter, thereby voluntarily ceasing the unconstitutional conduct.[68] "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."[69] "This burden is 'stringent' and 'heavy[,]'" and "[t]he "inquiry is fact-specific."[70] In order to demonstrate that the case is moot, the "defendant must undertake 'changes that are permanent in nature' and 'foreclose a reasonable chance of recurrence of the challenged conduct.'"[71]

Further, under binding Tenth Circuit precedent, a superseding ordinance does not automatically cure the constitutional infirmities of the prior ordinance. "Where a new statute 'is sufficiently similar to the repealed statute that it is permissible to say that the challenged conduct

---

[67] *Id.*
[68] Defs.' Mot. (ECF No. 83) at 2.
[69] *WildEarth*, 690 F.3d at 1183 (quotation marks omitted) (quoting *Friends of the Earth*, 528 U.S. at 190).
[70] *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 881 (10th Cir. 2019).
[71] *Id.* (quoting *Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004)).

continues,' the controversy is not mooted by the change, and a federal court continues to have jurisdiction."[72]

Defendants' mootness argument fails because the revised special events ordinance allows for continued unconstitutional discrimination against protected speech based on viewpoint or content in traditional public fora. The amended ordinance is not merely sufficiently similar to the repealed version, but creates new opportunities for discriminatory enforcement.[73] As this Court found in its order granting Plaintiffs' preliminary injunction motion, the original ordinance was unconstitutionally overbroad and vague, and encouraged arbitrary enforcement.[74] Defendants have argued that the "changes [in the City Code] are significant and afford new protections for Plaintiffs and others,"[75] but in reality Defendants have introduced *more*, and potentially more invidious, constitutional problems that restrict free speech. The revised ordinance, though lacking the Advertising Prohibition and Moratorium, presents similar defects of vagueness and functions as a prior restraint of expression in a traditional public forum, as demonstrated by the examples below.

First, new City Code § 3-10-10(8)(d) provides that an application for a special events permit will be denied if "the applicant or any person on whose behalf the application for a permit was made . . . had violations of state or local laws at a prior event." This provision is plainly an impermissible prior restraint, as it appears to allow for the denial of permits based on past violations of the City Code or other ordinances. "Laws that impose a prior restraint on the free

---

[72] *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) (quoting *Ne. Fla.*, 508 U.S. at 662 n.3); *see also Citizen Ctr. v. Gessler*, 770 F.3d 900, 907-08 (10th Cir. 2014) (plaintiffs' challenge to county balloting practices not moot where new regulations "allow continuation of the conduct being challenged.").

[73] Plaintiffs are considering moving for leave to amend their complaint to include challenges to the new City Code provisions.

[74] ECF No. 63 at 23-48.

[75] Defs.' Mot. (ECF No. 83) at 8.

exercise of speech have been disfavored as tantamount to censorship."[76]  This applies in the context of the denial of permit applications.  "Denial of a permit for prior violations unquestionably entails a total abridgement of a citizen's right to use the forum."[77]  The Supreme Court and federal courts of appeals have rejected laws with nearly identical language as prior restraints.[78]

Further, § 3-10-10(8)(d) is vague because it provides no guidance as to what it means for an applicant to "ha[ve] violations . . . at a prior event."  The provision does not specify whether the violations must be based on the applicant's conduct (as opposed to the conduct of an attendee or vendor, for example) or on conduct that occurred during and on the premises of the event (as opposed to in connection with the event more generally), or whether the past violations must have been adjudicated.  As written, § 3-10-10(8)(d) arguably empowers the City Council to deny a permit if an attendee at one of the applicant's prior events is alleged to have violated a parking ordinance when shopping for an outfit for the event.  This is exactly the type of unbridled discretion that this Court found rendered prior special events ordinances unconstitutional.[79]

Second, new City Code § 3-10-13 presents similar prior restraint and vagueness problems while also threatening to punish speakers on an unconstitutional theory of guilt by association.[80]

---

[76] *See Near v. Minnesota*, 283 U.S. 697, 713 (1931).

[77] *Fernandes v. Limmer*, 663 F.2d 619, 632 (5th Cir. 1981) (holding that a local ordinance which allowed permits to be withheld in the event that "the Applicant or any agent or representative of the Applicant . . . has previously violated . . . Regulations of the Dallas-Fort Worth Regional Airport Board, or has violated any of the terms and provisions of any prior permit" was an impermissible prior restraint based on the categorical denial of permits for prospective activity based on prior violations). *See also Kunz v. New York*, 340 U.S. 290, 293 (1951) (holding denial of permit to engage in outdoor religious activity based on earlier revocation of speech permit, where administrative officer had unbounded discretion, was impermissible prior restraint."); *Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1164 (9th Cir. 2007) (adopting the rationale of *Fernandes*).

[78] *See Fernandes*, 663 F.2d at 632.

[79] *See* PI Order (ECF No. 63) at 37-40.

[80] *See N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 925 (1982) (explaining that neither a "guilt by association" nor a "guilt for association" theory of liability for violent acts could

That provision threatens to limit or outright ban the ability to apply for special events permits if the permittee, any person at the event, or any aspect of the event is found to have violated any provision of the City Code—including the provision holding a permittee liable if an event attendee violates a City Code provision or law.[81]  It is thus a prior restraint, and another patent attempt to enable arbitrary enforcement, for the same reasons as § 3-10-10(8)(d).   The provision's constitutional infirmity is particularly evident to the extent that it seeks to hold the applicant responsible for the actions of attendees—actions that the applicant did not authorize or ratify—by temporarily or permanently banning the applicant from holding events in St. George; such "would impermissibly burden the rights of political association that are protected by the First Amendment" and be impermissibly vague.[82]

Third, the City Code has been amended to include a multi-stage appeals process.[83] Specifically, an applicant whose permit is denied must appeal to an Administrative Law Judge before seeking relief in a state court, which is then instructed to presume that the Administrative

---

[81] City Code § 3-10-13(A) states: "Any admission to, finding of civil responsibility for, or finding of guilt for violations of federal, state, or local laws during the course of the event, by the Permittee or attendees of the event . . . shall also be deemed a violation of this Chapter and subject to the penalties set forth in Subsection C below."  Subsection C, in turn, states: "Events and/or Permittees that are found to have violated the terms of this Chapter shall be barred from applying for another Special Event Permit for the same or another event for a period of two years (730 calendar days from the date of the violation).  Events and/or permittees which are barred a second time shall be permanently prohibited from applying for a Special Event Permit."

[82] *Claiborne Hardware*, 458 U.S. at 931.  *See also id.* at 924–34; *Grayned v. City of Rockford*, 408 U.S. 104, 114–15 (1972); *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (finding that a law is unconstitutionally vague on its face if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or it "authorizes or even encourages arbitrary and discriminatory enforcement."); *ACORN*, 835 F.2d at 740 (holding that prior restraint in the form of a licensing scheme abridges free speech when it gives government officials unfettered discretion to grant or deny permission); *Fernandes*, 663 F.2d at 632; PI Order (ECF No. 63) at 34-37.

[83] St. George City Code § 3-10-11.

Law Judge's decision was correct.[84]  While Defendants repeatedly describe the Administrative Law Judge as "independent,"[85] the City Code defines the position as one "appointed by the mayor and city council."[86]  In general, "appointive officers" may be "removed by the city council"[87] under the City Code, and the Administrative Law Judge, specifically, may be disqualified "for bias, prejudice, interest, or any other reason for which a judge may be disqualified in a court of law."[88]  It is hard to imagine how this provision, placing appeals decisions in the hands of a judge subject to removal by the city council and whose decisions are subject to deferential state court review in the first instance,[89] is anything but an attempt to place more obstacles in the way of special permit applicants whose applications are denied.  Indeed, it appears to be a direct reaction to Plaintiffs' decision to file this lawsuit.

Defendants' cited authority is inapposite.  *Olson v. City of Golden*[90] is also distinguishable.  In that case, the Tenth Circuit considered a challenge to an ordinance that was subsequently amended, and held that the changes to the ordinance sufficiently addressed the plaintiff's concerns and left nothing left for her to dispute.[91]  In this case, however, Defendants have removed certain challenged provisions from the amended ordinance, but replaced them with more constitutionally infirm provisions that continue to allow for discriminatory application.  The provisions are thus

---

[84] *Id.*

[85] Defs.' Mot. (ECF No. 83) at 2, 6, 10.

[86] City Code § 1-12A-10.

[87] *Id.*, § 1-7-4.

[88] *Id.*, § 1-12B-5-6.

[89] An applicant whose civil rights were violated by a permit denial would not need to exhaust Defendants' more extensive administrative scheme to seek relief under 42 U.S.C. § 1983.  *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982) ("[E]xhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983.").

[90] 541 Fed. App'x. 824, 827 (10th Cir. 2013) (unpublished).

[91] *Id.*

"sufficiently similar to the repealed [ones] that it is permissible to say that the challenged conduct continues."[92]

### III. Plaintiffs' Claims For Declaratory and Injunctive Relief Are Not Moot Under the "Capable Of Repetition, Yet Evading Review" Exception.

Even assuming Defendants' revision of the events ordinance otherwise moots Plaintiffs' claims for declaratory and injunctive relief, the Court should deny their motion for partial summary judgment under the "capable of repetition, yet evading review" exception to the mootness doctrine. As the Tenth Circuit has recognized, "[t]here is an exception to the mootness doctrine . . . where the underlying dispute is 'capable of repetition, yet evading review.'"[93]  "An issue will not be considered moot although the controversy generating it has dissolved if two conditions are present: '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'"[94]  Here, both conditions are met.

First, the type of action challenged in this case—Defendants' unlawful denial of applications for special event permits—unfolds over too short a time period to be fully litigated. The facts giving rise to this suit are instructive.  The final decision denying Plaintiffs' permit application occurred on April 11, 2023, when the City Defendants denied Plaintiffs' appeal, less than a month before Plaintiffs' scheduled event.  Even under the new ordinance's application requirements, applications must be submitted 45 days prior to the event and a decision to deny a permit can be issued a mere 10 business days before the scheduled event.[95] The Tenth Circuit has

---

[92] *Id*.

[93] *Buchheit v. Green*, 705 F.3d 1157, 1160 (10th Cir. 2012) (quoting *Turner v. Rogers*, 564 U.S. 431, 440 (2011)).

[94] *Combined Commc'ns Corp. v. Finesilver*, 672 F.2d 818, 820 (10th Cir. 1982) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).

[95] Defs.' Mot. (ECF No. 83) at 8.

found that a relevant time period of "less than one year" falls within the "capable of repetition yet evading review" mootness exception.[96]

Specifically, in cases challenging unlawful denials of event permits, courts have found that the "injury is inherently of such short duration as to make judicial review largely impossible."[97] The Ninth Circuit addressed a similar set of facts in *N.A.A.C.P., W. Region v. City of Richmond*.[98] In that case, the NAACP sought to host a march and rally to protest the recent death of a Black man who died in police custody.[99]  The district court originally denied the NAACP's request for a temporary restraining order to host the protest but, while that decision was on appeal, the parties agreed to allow the event to go forward.[100]  After the Ninth Circuit dismissed the interlocutory appeal and remanded to the district court, the defendant city successfully moved for summary judgment, arguing, among other things, that the case was moot.[101]  The Ninth Circuit reversed, finding the case was not moot since "the underlying dispute between the parties [was] capable of repetition, yet evading review."[102]  Specifically, the court noted the NAACP's "alleged injury [was] fleeting because the capacity of a topical parade to communicate may be diminished the longer it is delayed."[103]

Similarly, here, Plaintiffs seek to hold events that celebrate and affirm the LGBTQ+

---

[96] *Kansas by & through Kansas Dep't for Child. & Fams. v. SourceAmerica*, 874 F.3d 1226, 1238 (10th Cir. 2017).  *See also United States v. Seminole Nation of Oklahoma*, 321 F.3d 939, 943 (10th Cir. 2002) (noting the "too short to be fully litigated" prong of the "capable of repetition, yet evading review exception" to mootness is established when the challenged action is "of a sufficiently limited duration to ordinarily escape appellate review").

[97] *Pinette v. Capitol Square Rev. & Advisory Bd.,* 30 F.3d 675, 677 (6th Cir. 1994), *aff'd*, 515 U.S. 753 (1995).

[98] 743 F.2d 1346 (9th Cir. 1984).

[99] *Id.* at 1349.

[100] *Id.* at 1350.

[101] *Id.*

[102] *Id.* at 1353 (quotation marks omitted) (quoting *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 546 (1976)).

[103] *Id.*

community, often as a response to ongoing attacks and other direct instances of bias and mistreatment.  Defendants chose not to appeal the Court's preliminary injunction last year, but if they had appealed, Plaintiffs could have been waiting over a year for a decision from the Tenth Circuit to finally allow them to host their event.  Plaintiffs remain committed to hosting their events and to defending their right to do so if and when Defendants use the revised ordinance to deny their permit applications, as Plaintiffs suspect they will.  However, Plaintiffs "cannot fully litigate the validity of the [City Defendant's] ordinance during the time [they] wish[] to exercise free expression."[104]  Accordingly, Plaintiffs satisfy the first condition of the "capable of repetition, yet evading review" exception.

Second, there is significantly more than a "reasonable expectation" that Plaintiffs will be subjected to the same discriminatory action.  Plaintiffs will continue to host events featuring drag performances and other content that celebrates and affirms the LGBTQ+ community.  As this Court recognized in granting Plaintiffs' motion for preliminary injunction, the record provides "plentiful evidence of the animus of the Defendants towards Plaintiffs' speech."[105]  Defendant Tanner not only orchestrated the denial of Plaintiffs' April 2023 event, she attempted to revoke Defendant City's sponsorship of a popular local farmers market due to the organizer's featuring of drag performers.[106]  Defendants are responsive to residents vocally opposed to the LGBTQ+ community and to Plaintiffs' speech celebrating that community;[107] indeed, such vitriol precipitated the discriminatory denial of Plaintiffs' permit application, which four members of the

---

[104] *N.A.A.C.P., W. Region*, 743 F.2d at 1353.  *See also Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 648 (2d Cir. 1998) ("In the last two years, ILGO has had only a few weeks between being notified that its application for a permit was denied and the date of the Parade in which to obtain judicial review.  This time period is clearly insufficient for full litigation of ILGO's claims.").
[105] PI Order (ECF No. 63) at 26.
[106] Avalōx Decl. (ECF No. 34-6) ¶ 14.
[107] *See, e.g.*, Avalōx Decl. Ex. B (ECF No. 34-8) at DSTAR000062-69.

City Council upheld on appeal.[108]  The City even fired its City Manager for his handling of a permit application for a drag event.[109] As explained above, the new licensing regulations afford Defendants similar avenues to discriminate against Plaintiffs' speech in the future.  Defendants could, for example, deny a future permit based on the prior acts of an event attendee, or orchestrate the denial of an appeal through political pressure on the administrative law judge they are empowered to appoint, just as Defendants pressured (and ultimately ousted) the prior City Manager. [110]  Even under the revised ordinance, the "possibility is not so remote and speculative"[111] that Defendants will use the provisions discussed above to achieve the same discriminatory result.

Absent this Court's "invo[cation] [of] the capable-of-repetition-yet-evading-review exception, [Plaintiffs] would never be able to mount a timely challenge"[112] to the reasonably expected denials of future permit applications under the revised "special events licensing scheme."[113]  Accordingly, Plaintiffs' requests for declaratory and injunctive relief are not subject to dismissal.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion for partial summary judgment.[114]

---

[108] *Id.* ¶ 22.

[109] Michelle Tanner (@michelletannerusa), Instagram (June 3, 2022), https://www.instagram.com/p/CeWlnkaphwq/.

[110] *Id.*

[111] *Finesilver*, 672 F.2d at 821.

[112] *Am. Wild Horse Pres. Campaign v. Jewell*, 847 F.3d 1174, 1186 (10th Cir. 2016).

[113] Complaint (ECF No. 2) at 42 ¶ 1.

[114] Moreover, Plaintiffs request that the Court deny Defendants' motion expeditiously to aid in the prompt resolution of this case, inasmuch as discovery is now stayed pending the resolution of Defendants' motion.  *See* ECF No. 90.

Dated:          January 26, 2024                    Respectfully submitted,

                                                    By: /s/ Jeremy Creelan

John Mejia
**AMERICAN CIVIL LIBERTIES UNION
OF UTAH FOUNDATION**
311 South State Street, Suite 310
Salt Lake City, Utah 84111
(801) 521-9862
jmejia@acluutah.org

Emerson Sykes*
Joshua A. Block*
Elizabeth Gyori*
**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**
125 Broad Street, Floor 18
New York, NY 10004
(212) 549-2500
esykes@aclu.org
jblock@aclu.org
egyori@aclu.org

Jeremy Creelan*
Rémi Jaffré*
Owen W. Keiter*
**JENNER & BLOCK LLP**
1155 Avenue of the Americas
New York, NY 10036
JCreelan@jenner.com
RJaffre@jenner.com
OKeiter@jenner.com

Jocelyn Sitton*
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL 60654
JSitton@jenner.com
(202) 639-6000
(312) 222-9350

*Appearing pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  The electronic case filing system sent a "Notice of E-Filing" to all e-filing counsel of record in this case.

<u>/s/ Jeremy Creelan</u>