THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| SOUTHER UTAH DRAG STARS, LLC, and MITSKI AVALOX,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ST. GEORGE, CITY COUNCIL OF ST. GEORGE, COUNCILMEMBER JIMMIE HUGHES, COUNCILMEMBER DANIELLE LARKIN, COUNCILMEMBER NATALIE LARSEN, COUNCILMEMBER GREGG MCARTHUR, COUNCILMEMBER MICHELLE TANNER, MAYOR MICHELE RANDALL, and CITY MANAGER JOHN WILLIS,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>Case No. 4:23-cv-44-DN-PK<br><br>District Judge David Nuffer |

Plaintiffs Southern Utah Drag Stars and its representative Mitski Avalox (collectively "SUDS") sued the City of St. George, the City Manager, the City Council, and the City Councilmembers (collectively "City") alleging improper denial of a special events permit for a drag performance at a city park.[1] SUDS sought immediate injunctive relief ("PI Motion").[2] There was sufficient evidence of discriminatory intent and viewpoint discrimination to justify entry of a preliminary injunction order on June 16, 2023 ("PI Order"), requiring immediate issuance of an event permit to SUDS.[3]

---

[1] [SUDS'] Complaint ("Complaint"), docket no. 2, filed May 23, 2023.

[2] Notice of Motion and Motion for Preliminary Injunction ("PI Motion"), docket no. 34, filed May 30, 2023.

[3] Memorandum Decision and Order Granting Preliminary Injunction ("PI Order"), docket no. 63, filed June 16, 2023.

The City has since filed a Motion[4] seeking partial summary judgment on several of the injunctive and declaratory prayers for relief in SUDS' Complaint on the basis of mootness. That Motion is denied in part and granted in part by this Order.

Because SUDS is seeking a declaratory judgment, not only on the facial constitutionality of the City's ordinances, but on the ordinances' *misuse* by the City,[5] a case or controversy still exists. The final adjudication of past facts remains to be made and is necessary for any future adjudication of damages and attorneys' fees. The City's repeal of the challenged ordinances does not erase the evidence that the ordinances were applied as a targeted attempt to restrict SUDS access to a public forum, nor does the repeal of the ordinances *ipso facto* constitute sufficient assurance that future discriminatory conduct will not take place.[6] SUDS' special event, though past and gone, was only held after court intervention. Permanent injunctive relief may still be necessary to ensure SUDS is not similarly treated in the future. Therefore, the relief sought by SUDS, including declaratory judgment on the *conduct* of the City and the prayers for injunctive relief against future discriminatory conduct are not moot.

However, the portions of SUDS' third and fourth prayers for relief seeking an injunction are moot. SUDS sought to prohibit the City from enforcing its ordinances and for immediate permit issuance to hold a specific drag performance in 2023. Those ordinances are no longer operative because they were repealed, and the event was ultimately held. No further relief can be granted for those prayers.

---

[4] Defendants' Motion for Partial Summary Judgment on Plaintiffs' Claims for Injunctive and Declaratory Relief ("Motion"), docket no. 83, filed December 14, 2023.

[5] PI Order at 40, ¶194 ("Defendants excepted so many events from their Advertising Prohibition, and from their six-month moratorium on special event permits, that the enforcement of the Advertising prohibition and moratorium against plaintiffs is unconstitutional discrimination.").

[6] *Infra,* Discussion at 13-19.

**Contents**
BACKGROUND ................................................................................................................ 3
UNDISPUTED MATERIAL FACTS ............................................................................... 6
STANDARD OF REVIEW FOR SUMMARY JUDGMENT ........................................ 6
STANDARD FOR DETERMINING MOOTNESS........................................................ 7
DISCUSSION ..................................................................................................................... 9
     SUDS' First Prayer for a Declaration of Unconstitutional Use of Ordinances is Not Moot
     ........................................................................................................................................ 10
     SUDS' Second Prayer for Declaration of Discriminatory Permit Denial is Not Moot .... 13
     SUDS' Third Prayer for Injunction Against Unconstitutional Permit Denial is Moot in
          Part ............................................................................................................................ 14
     SUDS' Fourth Prayer for Issuance of the June 30, 2023, Permit is Moot ........................ 19
ORDER ............................................................................................................................. 20

# BACKGROUND[7]

On March 3, 2023, SUDS applied for a special event permit for a community performance titled "Our Allies & Community Drag Show" ("The Allies Show"). Two weeks later, the City Council adopted a moratorium, Ordinance No. 2023-03-003 (the "Moratorium"), to prohibit the processing of all new special event applications for six months. Exempted from the Moratorium were all recurring events, all city-sponsored events, and all new special events with applications completed prior to a specified date. The stated reasons for the Moratorium were to prevent overuse of the City's parks and to permit the City Council to make changes to the City Code regarding special events permits.

On March 31, 2023, an employee of the City, Sarah Reber, on the direction of the City Council, denied SUDS' permit application on the grounds that SUDS had violated the section of the special events ordinance, City Code 3-10-3 and 3-10-4(c), prohibiting advertising an event prior to receiving permit approval (the "Advertising Prohibition"). The Advertising Prohibition

---

[7] This Background is drawn from the PI Order.

had never been enforced previously and was regularly violated by the majority of all special event applicants. At the time of SUDS' application, no event permit application had ever been denied for an advertising violation. And 12 of the 16 events with applications pending at that time had advertised prior to receiving permit approval. SUDS' application was one of three denied. SUDS appealed the permit denial, but the City Council affirmed the denial on April 11, 2023.

In May 2023, SUDS filed their Complaint, alleging the unconstitutionality of the Advertising Prohibition, the Moratorium, and the use of those tools as a pretext for the City's unlawful suppression of SUDS' First Amendment right to free speech in a public forum. SUDS' Complaint sought an injunction to cause the City to issue a permit for their proposed event. Through their PI Motion, SUDS demonstrated that the Moratorium, the Advertising Prohibition, and their targeted enforcement were unconstitutional and violated SUDS' right to free speech. There was sufficient evidence of discriminatory intent and viewpoint discrimination to justify entering the PI Order on June 16, 2023.[8] Immediate issuance of a special event permit to SUDS was ordered. SUDS held the Allies Show on June 30, 2023, at J.C. Snow Park.[9]

On August 31, 2023, after numerous public hearings seeking feedback,[10] the City enacted a new special event ordinance which replaced the previous event ordinance, including the Advertising Prohibition, and repealed the Moratorium.

---

[8] PI Order at 46 ("The record evidence is replete with statements and conduct of the City Councilmembers since at least June 2022 which demonstrate severe animus toward Drag Stars protected speech and activities.").

[9] Motion at 5.

[10] St. George City Council Minutes – Work Meeting, attached as Exhibit 1 (docket no. 94-1) to Reply Memorandum in Support of Defendants' Motion for Partial Summary Judgment on Plaintiffs' Claims for Injunctive and Declaratory Relief, docket no. 94, filed February 16, 2024.

The City now seeks partial summary judgment dismissing four of SUDS' prayers for injunctive and declaratory relief on mootness grounds. According to the City, these requests for relief are moot:

1. Enter a declaratory judgment that Defendants' special event licensing scheme, including its advertising restrictions and six-month moratorium on special events, as implemented against Plaintiffs, violates the First and Fourth Amendments to the United States Constitution and Article I, section 24 and IV, section 1 of the Utah Constitution.

2. Enter a declaratory judgment that Defendants' discriminatory denial of Plaintiffs' event permit application violated the First and Fourteenth Amendments to the United States Constitution and Articles I, section 24 and IV, section 1 of the Utah Constitution.

3. Award Plaintiffs a preliminary and permanent injunction preventing the City from: unconstitutionally denying Plaintiffs special event permits to host drag performances; enforcing the six-month moratorium on special events against Plaintiffs; and enforcing the advertisement ban against drag performances organized by Plaintiffs.

4. Order Defendants to approve Plaintiffs' special event permit application, and issue the same, for an event dated June 30, 2023, or an alternative date in June agreed upon by the parties.[11]

SUDS filed their response to the Motion on January 24, 2024 ("Opposition"), arguing that summary judgment was inappropriate because of SUDS' continued presence in the community; SUDS' belief that they will continue to be targeted for their viewpoint; and SUDS' belief that the City's remedial actions are insufficient to ensure protections against future discriminatory conduct by the City.[12]

This Order denies in part and grants in part the City's Motion.

---

[11] Complaint at 42, docket no. 2, filed May 23, 2023.

[12] Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment ("Opposition"), docket no. 91, filed January 26, 2024.

## UNDISPUTED MATERIAL FACTS

1. On June 16, 2023, the PI Order was entered against the City, ordering it to issue a special event permit to SUDS. The PI Order found sufficient evidence that the City's denial of SUDS' permit application was in violation of SUDS' constitutional rights to freedom of speech and equal protection under the law.[13]

2. On June 30, 2023, SUDS held the Allies Drag Show at J.C. Snow Park.[14]

3. On August 31, 2023, the City repealed its previous special events ordinance, including the Advertising Prohibition and the recently enacted six-month Moratorium, and replaced it with Ordinance 2023-017.[15]

4. As of the date of briefing the City's Motion, there is no indication that SUDS has filed any new permit applications with the City.[16]

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[18] Facts are material if they might "affect the outcome of the suit under the governing law."[19] In determining whether there is a genuine dispute as to material fact, the court

---

[13] PI Order at 52-56.

[14] Motion at 5.

[15] *Id.* at 6.

[16] Motion at 10-11.

[17] Fed. R. Civ. P. 56(a).

[18] *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998).

[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[20]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[21] If the moving party meets their initial burden, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[22] Speculation and conjecture are not enough—"the party opposing the motion . . . 'must set forth *specific facts* showing that there is a *genuine issue* for trial as to those dispositive matters for which it carries the burden of proof.'"[23] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to avoid summary judgment.[24]

"[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[25]

### STANDARD FOR DETERMINING MOOTNESS

"Mootness requires that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."[26] Therefore, "[t]he crucial question is whether

---

[20] *Adler*, 144 F.3d at 670.

[21] *Id.* at 670-71.

[22] *Id.* at 671 (cleaned up).

[23] *Universal Money Centers, Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994) (quoting *Applied Genetics*, 912 F.2d 1238, 1241 (10th Cir. 1990)).

[24] *Anderson*, 477 U.S. at 252.

[25] *Id.* at 249.

[26] *Utah Animal Rights Coalition ("UARC") v. Salt Lake City Corp.*, 371 F.3d 1248, 1256 (10th Cir. 2004).

'granting a present determination of the issues offered . . . will have some effect in the real world.'"[27]

In general, courts recognize two exceptions to the mootness doctrine, *i.e.*, situations in which a case remains subject to federal jurisdiction notwithstanding the seeming extinguishment of any live case or controversy.

One exception involves disputes that are "capable of repetition, yet evading review."[28] "The exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."[29]

The second exception is a party's voluntary cessation of unlawful conduct. Under the "voluntary cessation exception" to mootness, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."[30] However, the voluntary cessation exception does not apply, and a case *is* moot, "if the defendant carries 'the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'"[31] The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to recur is on the party asserting mootness.[32]

The Tenth Circuit has instructed courts to "take a claim-by-claim approach to mootness and [to] decide whether a case is moot as to each form of relief sought."[33]

---

[27] *Citizens for Responsible Government v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000).

[28] *Fed. Election Comm'n v. Wis. Right to Life, Inc.,* 551 U.S. 449, 462 (2007).

[29] *Id.*

[30] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

[31] *Friends of the Earth v. Laidlaw Environmental Services*, 528 U.S. 167, 190 (2000).

[32] *Id*. at 189.

[33] *Robert v. Austin*, 72 F.4th 1160, 1163 (10th Cir. 2023) (citations omitted).

## DISCUSSION

The City's arguments for mootness center around two undisputed material facts: (1) the Advertising Prohibition and Moratorium that were used to justify denying SUDS' event permit and halt further permit issuance have been repealed and replaced with a new ordinance, and (2) the event for which SUDS sought injunctive aid to obtain a permit has taken place. The City argues that based on these two events, four of SUDS' prayers for relief have been satisfied, making further adjudication unnecessary for lack of a live case or controversy.[34]

In the City's view, because SUDS held their event and have no permit applications pending, no further injunction is necessary. "This court entered a preliminary injunction ordering St. George City to allow the event to be held on June 30, 2023. St. George City complied with this order, and Plaintiffs held their event on June 30th."[35] The City also states, "the new special event ordinance expressly repeals the advertising ordinance and moratorium that are the subject of the declaratory and injunctive relief sought for by the Plaintiffs."[36] The City points to other changes in the new ordinance as evidence that no further court intervention is needed, such as moving appellate review of permit denials out of the City Council and into the hands of an independent administrative law judge. The City argues: "Thus the City Council, who Plaintiffs contend used the advertising prohibition and moratorium as a pretext for discrimination, no longer affirms or denies permit applications. These changes are significant and afford new protections for Plaintiffs and others."[37]

---

[34] Motion at 8.

[35] *Id*. at 2.

[36] *Id*. at 8.

[37] *Id.*

SUDS argues that the City has not met its burden of proof because the facts of this case qualify under both exceptions to mootness. First, though the City ceased the unlawful behavior and issued the permit for one event, the new ordinance is similarly flawed, so that the unlawful behavior is reasonably expected to recur.[38] And second, SUDS intend to hold community drag events in the future,[39] so the issues are capable of repetition yet evading review. SUDS states: "Neither Plaintiffs' intent to continue hosting drag events in St. George nor Defendants' animus toward Plaintiffs and their protected speech has changed as a result of the Court's preliminary injunction order . . . [therefore] there is a significant likelihood that Defendants will continue abusing their power to discriminate against Plaintiffs absent permanent relief from this Court."[40]

Because the Tenth Circuit reviews cases for mootness on a claim-by-claim approach, each of SUDS' four prayers for relief will be analyzed under the mootness framework discussed above.

**SUDS' First Prayer for a Declaration of Unconstitutional Use of Ordinances is Not Moot**

SUDS' first prayer for relief seeks declaration that the City enforced ordinances against SUDS in a targeted manner in violation of SUDS' constitutional rights:

> Enter a declaratory judgment that Defendants' special events licensing scheme, including its advertising restriction and six-month moratorium on special events, as implemented against Plaintiffs, violates the First and Fourteenth Amendments to the United States Constitution and Article I, section 24 and IV, section 1 of the Utah Constitution.[41]

In August 2023, just three months after the PI Order required the City to issue an event permit to SUDS, the City repealed and replaced the special event ordinance, which contained the

---

[38] Opposition at 21.

[39] *Id.* at 17.

[40] *Id.* at 7.

[41] Complaint at 42.

Advertising Prohibition, and the City repealed the Moratorium. The City points to this voluntary change as evidence that SUDS' pleas for declaratory relief are now moot. The City cites *Citizens for Responsible Government State Political Action Committee v. Davidson* [42] for the premise that a constitutional challenge to a statute is no longer a live case or controversy when that statute is repealed. "In general, the repeal of a challenged statute is one of those events that makes it 'absolutely clear that the allegedly wrongful behavior . . . could not reasonably be expected to recur.'"[43] Under *Davidson*, a challenge is then clearly moot because a plaintiff has "no legally cognizable interest in the constitutionality of an obsolete statute."[44]

However, this does not mean that a repealed statute automatically signals mootness of a claim in every case. In *Davidson*, the wrongful behavior was the mere *threat* of prosecution under a statute. None of the complaining parties had been found in violation of or punished under the statutes in question, so after the statutes were repealed, any injury could only be hypothetical. If SUDS were only challenging the facial constitutional validity of the Advertising Prohibition and Moratorium in advance of a permit application, then repealing those ordinances would likely moot SUDS' prayers for relief. But that is not SUDS' challenge. SUDS did, in fact, apply for an event permit which was denied. The resulting harm was real and concrete.

A closer reading of SUDS' first prayer for relief reveals that SUDS are *not* making a facial constitutional challenge to the Advertising Prohibition and Moratorium. SUDS challenges the *way* the City used those ordinance provisions to specifically target and exclude SUDS' viewpoint. This is an "as applied" challenge, the essence of which is "a claim that the manner in which a statute or regulation was applied to a plaintiff in particular circumstances violated the

---

[42] 236 F.3d 1174 (10th Cir. 2000).

[43] *Id.* at 1182 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000)).

[44] *Id.*

Constitution, as for example where a facially valid statute was applied to a plaintiff in a discriminatory fashion based on animus toward the plaintiff's First Amendment protected views or activities."[45]

SUDS are seeking a final determination that the City's actions in using the ordinances were unconstitutional viewpoint discrimination. Their grievance is not with the hammer, but with how the City wielded the hammer. The subsequent change in the City's ordinance does not eradicate the City's past actions or ensure the non-discriminatory application of the new ordinance.

Under both exceptions to mootness, SUDS' prayer for relief survives. Under the voluntary cessation exception, which looks to whether a defendant's change is permanent in nature, the City's removal of a challenged ordinances is *evidence* of a change, but it is far from conclusive.

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor and bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice[.][46]

However, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."[47]

While the City has created a new ordinance governing event permits, it has not met its burden to show that the new ordinance will not similarly be used as a tool to deny SUDS a voice in a public forum. The new ordinance still provides a large degree of discretion in the governing

---

[45] *Almengor v. Schmidt*, 692 F.Supp.2d 396, 397 (S.D.N.Y.2010).

[46] *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 (1982).

[47] *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC) Inc.*, 528 U.S 167, 190 (1990).

body to determine who receives event permits, and the City Council still reserves the right to review permit applications.[48]

Additionally, SUDS' prayer for relief is not moot under the "capable of repetition yet evading review"[49] mootness exception. The initial challenged action by SUDS had brief duration, "too short to be fully litigated"[50] prior to the City's cessation. There is enough evidence of animus from individuals on the City Council (whose membership has not changed) and others in the community toward SUDS to provide a reasonable expectation that they may be subject to similar discriminatory treatment in the future. And while the PI Order found violations of SUDS' constitutional rights, no declaratory judgment has entered.

SUDS still has a cognizable interest in a final determination of the constitutionality of the manner in which the City used the former ordinances to deny SUDS' access to a public forum. Therefore, SUDS' claims are not moot with respect to the first prayer for relief.

**SUDS' Second Prayer for Declaration of Discriminatory Permit Denial is Not Moot**

SUDS' second prayer for relief seeks declaration that the City discriminatorily denied SUDS' permit application:

> Enter a Declaratory Judgment that Defendants' discriminatory denial of Plaintiffs' special event permit application violated the First and Fourteenth Amendments to the United States Constitution and Articles I, section 24 and IV, section 1 of the Utah Constitution.[51]

This prayer for relief is similar to SUDS' first prayer concerning the City's unconstitutional use of its ordinances. And the second prayer for relief is likewise not moot because SUDS does not yet have a final declaration of the unconstitutionality of the City's denial

---

[48] *Infra*, Discussion at 16-19.

[49] *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

[50] *Id.*

[51] Complaint at 42.

of SUDS' permit. The second prayer for relief was not satisfied by the issuance of a court-ordered permit, and SUDS is still entitled to final declaratory relief for the City's past violations. Additionally, the facts underlying this declaratory judgment and the declaration itself provide the necessary foundation for SUDS' associated claims for damages and attorneys' fees. "Thus, interim developments that moot a claim for prospective relief do not necessarily moot a claim for damages."[52] While SUDS still has a claim arising from the discriminatory treatment by the City, SUDS has a cognizable interest in the declaratory judgment.[53]

As SUDS stated in their Opposition:

> [T]his case was never solely about the event permit that Defendants denied to Plaintiffs last year or the particular advertising provisions of the City Code that they invoked to do it. Rather, it has been about Defendants' animus toward Plaintiffs and their 'campaign to deny Drag Stars a public location for its protected speech.[54]

SUDS' second prayer for a declaration that the City's permit denial was wrongful is not moot.

### SUDS' Third Prayer for Injunction Against Unconstitutional Permit Denial is Moot in Part

SUDS' third prayer for relief seeks injunctive relief against the City:

> Award Plaintiffs a preliminary and permanent injunction preventing the City from: unconstitutionally denying Plaintiffs special event permits to host drag performances; enforcing the six-month moratorium on special events against Plaintiffs; and enforcing the advertisement ban against drag performances organized by Plaintiffs.[55]

---

[52] *Prison Legal News v. Federal Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019).

[53] *UARC v. Salt Lake City Corp*. 371 F.3d 1248, 1257 (10th Cir. 2004) ("Moreover, UARC has abandoned any claim for compensatory damages; thus, there is no claim that monetary damages could recompense the Plaintiff for prior injury. Any judgment on the constitutionality of the City's treatment of UARC's 2001 permit application would therefore be of no legal effect.").

[54] Opposition at 3 (quoting Complaint ¶ 107 at 26).

[55] Complaint at 42.

There are two distinct aspects of this prayer for relief. The first seeks injunctive relief preventing the City from unconstitutionally denying event permits to SUDS. The second seeks protection against use of the now-repealed Advertising Prohibition and Moratorium against SUDS.

The City argues that because SUDS held its event and has no permit applications pending, the prayer for relief is moot. The City points to the repeal and replacement of the old ordinance as conclusive evidence that discriminatory conduct will not recur for any future permit applications that SUDS might make. However, "[a] defendant's corrective actions which do not *fully comport* with the relief sought are . . . insufficient."[56] To moot such a prayer for relief, "a defendant must undertake changes that are permanent in nature and *foreclose* a reasonable chance of reoccurrence of the challenged conduct."[57]

In *Prison Legal News v. Federal Bureau of Prisons*, the Tenth Circuit held that the defendant had met its very heavy burden of proving mootness by showing that the specific unlawful behavior (illegal censure by withholding 11 publications from delivery to prison inmates) did not have a reasonable chance of recurrence. The defendant met this burden by delivering the 11 publications in question, changing the administrative policies that governed the standards for publication rejection, and by acknowledging under oath that the 11 publications were initially wrongfully withheld and similar publications would not be rejected in the future. The Tenth Circuit reasoned that "government self-correction provides a secure foundation for mootness *so long as it seems genuine*."[58] And the Tenth Circuit concluded that the corrective

---

[56] *Prison Legal News*, 944. F.3d at 881 (emphasis added).

[57] *Id.* (emphasis added).

[58] *Id.* (emphasis added).

15

actions taken by the defendant "accord the *genuine* government self-correction that courts accord solicitude."[59]

The City has failed to show with its Motion that its corrective actions were either genuinely motivated or permanent in nature, especially considering that the City has yet to acknowledge that its actions targeted and suppressed SUDS' viewpoint and expression.

The recent Supreme Court case of *FBI v. Fikre*[60] distinguishes temporary action from permanent corrective action sufficient to moot a claim for injunctive relief. "What matters is not whether a defendant repudiates its past actions, but what repudiation can prove about its future conduct. It is on that consideration alone . . . the potential for a defendant's future conduct—that we rest our judgment."[61]

In *Fikre*, the plaintiff, a resident and citizen of the United States, was placed on the government's "No Fly" list after taking a business trip to Sudan. He was prevented from returning to the United States for six years until he filed a lawsuit alleging that he had been placed on the "No Fly" list for constitutionally impermissible reasons. He sought both declaratory relief for the violation of his constitutional rights and injunctive relief prohibiting the government from keeping him on the "No Fly" list. After the lawsuit was filed, the government removed the plaintiff from the "No Fly" list and sought to dismiss the suit based on its voluntary administrative action. The Ninth Circuit held that the plaintiff's removal from the "No Fly" list was not sufficient to foreclose the possibility of recurrence of unlawful conduct.[62] On remand, the government submitted a declaration that the plaintiff would not be placed on the list in the

---

[59] *Id.* at 884 (emphasis added).

[60] 601 U.S. 234 (2024).

[61] *Id.* at 244.

[62] *Id.* at 234.

future based on current information.[63] The Supreme Court determined that the declaration was still insufficient to moot the case because it did not provide a reasonable assurance that the government would not subject the plaintiff to the same treatment in the future.[64]

SUDS' third prayer for relief encompasses not just temporary injunctive aid for a single, specific event, but permanent injunctive aid for future events and the right to apply for and hold such events without discrimination. As SUDS stated in their Opposition:

> [N]either the Plaintiffs' intent to continue hosting drag events in St. George nor Defendants' animus toward Plaintiffs and their protected speech has changed as a result of the Court's preliminary injunction order. Whether through special events permitting…or through other means, there is a significant likelihood that Defendants will continue abusing their power to discriminate against Plaintiffs absent permanent relief from this Court.[65]

That there is no current SUDS permit application pending is also not pertinent to this analysis. In *Fikre*, the plaintiff was taken off the "No Fly" list and had been off the list for years—presumably free to fly wherever he wanted without restriction—but the possibility remained that the government could decide to reinstate that status at any time. SUDS does not need to have a permit application pending to enjoy the right to non-discriminatory conduct from the City. On this record, while the City Council retains the right to review and halt or detain event permits, SUDS has a reasonable and realistic apprehension that they will be subjected to similar discriminatory treatment. The new ordinance has done nothing to assuage SUDS' apprehension, despite the City's assurances.

The City points to the new ordinance as evidence of the kind of permanent change that provides the necessary relief that SUDS is seeking. The Advertising Prohibition and Moratorium,

---

[63] *Id.* at 240.

[64] *Id.* at 235.

[65] Opposition at 4.

which are so ubiquitous in SUDS' Complaint, no longer exist. The old ordinance has been replaced by a new ordinance, which appears on its face to be very different. Permit recommendations are now made by a committee of 13 plus members, only one of which is a member of the City Council.[66] And all appeals for permit denials are now heard by an administrative law judge instead of the City Council. The City argues that these changes should yield the non-discriminate fairness that SUDS is seeking because SUDS' primary issue was with their treatment by and the decisions of the City Council.[67]

However, while "the City Council no longer affirms or denies decisions on permit applications,"[68] a careful examination of the City's new ordinance shows the City Council still has reviewing authority. Under the "Application Review, Approval, and Issuance" section of the new ordinance: "the City Manager may refer any request for a Special Event Permit to the City Council for recommendation prior to approval or denial."[69] This short sentence undercuts the City's assertion that the City Council is excluded from the decision-making process for permit issuance. The new ordinance's provisions governing permit approval or denial also have few concrete or defined standards for decision.[70] The new ordinance only minimally instructs the event review committee that upon review of a permit application they "shall provide a recommendation, including the identification of any comments or concerns."[71] The new

---

[66] Section 3-10-4 B., Ordinance No. 2023-17, attached as Exhibit 1 (docket no. 83-1) to Motion.

[67] Motion at 8.

[68] *Id.*

[69] Section 3-10-8, Ordinance No. 2023-17, attached as exhibit 1 (docket no. 83-1) to Motion.

[70] Section 3-10-10 states that grounds for denial include the violation of a federal, state, or local law, an event being inconsistent with the use of the park, or the location not having adequate resources to support the event, or an application containing material falsehoods.

[71] Section 3-10-4 C. 2., Ordinance No. 2023-17.

ordinance still allows for wide discretion to the event review committee, the City Manager, and the City Council to block or hinder attempts by SUDS to constitutionally gather.

Additionally, while the new ordinance cured some of the problems that existed within the old ordinance—like removing the vague Advertising Prohibition—it contains new provisions that may have the overall effect of stifling speech. These punitive provisions provide that "the Permittee or *attendees* of [an] event" who are found civilly responsible for or guilty of violations of federal, state, or local law during the event "shall be barred from applying for another Special Event Permit . . . for a period of two years."[72] A second event violation results in a *permanent* ban from applying for Special Event Permits.[73] As SUDS states, the overall result of this new ordinance is "to broaden the scope of the City's regulation of speech activities in public places and to stiffen the penalties for even the most technical rule violations."[74]

SUDS' third prayer for relief seeking a permanent injunction preventing the unconstitutional denial of a public forum for SUDS speech and expression is not moot.[75] However, the specific request for injunctive aid against the City's Advertising Ordinance and Moratorium is moot because those provisions are no longer in force.

### SUDS' Fourth Prayer for Issuance of the June 30, 2023, Permit is Moot

SUDS' fourth prayer seeks injunctive relief requiring issuance of a permit for SUDS' June 30, 2023, event:

---

[72] Section 3-10-13 (A) and (C), Ordinance No. 2023-17.

[73] *Id.*

[74] Opposition at 7.

[75] PI Order at 22 ("Given the thin arguments the City has advanced including that drag shows are not protected speech…and because of the plentiful evidence of the animus of the Defendants toward Plaintiffs' speech, relief granted Plaintiffs cannot assume there will be a fair review of their application . . . . It is not difficult to foresee additional supervision being necessary to ensure the City complies.").

19

Order Defendants to approve Plaintiffs' special events permit application, and issue the same, for an event dated June 30, 2023, or an alternative date in June agreed upon by the parties.[76]

The SUDS' permit was issued after a court order effectively granted this prayer for relief. The event has come and gone, and nothing remains for future adjudication. Therefore, summary judgment will be entered on this prayer for relief because it is now moot.

## ORDER

IT IS HEREBY ORDERED that the City's Motion[77] is DENIED in part and GRANTED in part as follows:

1. The Motion is DENIED as to SUDS' First Prayer for Relief;

2. The Motion is DENIED as to SUDS' Second Prayer for Relief;

3. The Motion is DENIED as to the portion of SUDS' Third Prayer for Relief seeking permanent injunction against the City to prohibit the unconstitutional denial of SUDS' event permits;

4. The Motion is GRANTED as to the portion of SUDS' Third Prayer for Relief seeking protection against the City's use of the Advertising Prohibition and Moratorium; and

5. The Motion is GRANTED as to SUDS' Fourth Prayer for Relief.

Signed August 3, 2024

BY THE COURT

David Nuffer
United States District Judge

---

[76] Complaint at 42.

[77] Docket no. 83, filed December 14, 2023.