SCOTT YOUNG (10695)
SPENCER FANE LLP
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
rsyoung@spencerfane.com
*Attorneys for Defendants*

RYAN N. DOOLEY (17009)
JAMI R. BRACKIN (08753)
CITY OF ST. GEORGE
175 E. 200 N.
St. George, Utah 84765
ryan.dooley@scgity.org
jami.brackin@sgcity.org
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SOUTHERN UTAH DRAG STARS, LLC, and MITSKI AVALOX,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ST. GEORGE, COUNCILMEMBER JIMMIE HUGHES, COUNCILMEMBER DANIELLE LARKIN, COUNCILMEMBER NATALIE LARSEN, COUNCILMEMBER GREGG MCARTHUR, COUNCILMEMBER MICHELLE TANNER, MAYOR MICHELE RANDALL, and CITY MANAGER JOHN WILLIS,<br><br>Defendants. | **DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (CLAIMS RELATING TO REVISED SPECIAL EVENT ORDINANCE ENACTED ON AUGUST 31, 2023) AND SUPPORTING MEMORANDUM**<br><br>Civil No. 4:23CV44<br><br>Honorable David Nuffer<br>Magistrate Paul Kohler |

## **RELIEF REQUESTED AND GROUNDS**

Defendants St. George City, City Council of St. George, Councilmembers Jimmie Hughes,

Danielle Larkin, Natalie Larsen, Gregg McArthur, and Michelle Tanner, Mayor Michelle Randall,

and City Manager John Willis (collectively "Defendants") move to dismiss Plaintiffs' claims in

their Amended Complaint based upon the revised special event ordinance ("Revised Special Event

1

Ordinance") that was enacted on August 31, 2023. Claims related to the revised ordinance are not ripe because Plaintiffs have not had an application processed and denied under the revised ordinance.

In the Spring of 2023, Plaintiffs filed an application for a permit to hold a drag show at a St. George City park. St. George City denied the application, and Plaintiffs sought a preliminary injunction on the basis that the denial violated the First Amendment. On June 16, 2023, this Court entered a preliminary injunction and ordered St. George City to allow Plaintiffs to hold their event at the Sun Bowl (Plaintiffs' chosen location) on June 30, 2023 (Plaintiffs' chosen date). Plaintiffs held their event at the Sun Bowl on June 30, 2023, just as the Court ordered. Because the Court found several deficiencies in St. George City's special event ordinance, St. George City began working on a revised ordinance. To this end, it held public work meetings to discuss possible changes on June 8th, July 20th, August 17, and August 24th. Plaintiffs have not alleged that they appeared or provided input at any of these work meetings. St. George City then adopted a revised special event ordinance on August 31, 2023.

More than a year later, on October 28, 2024, Plaintiffs filed an amended complaint. In it, they reiterated their claims based on the prior special event ordinance and their permit denial in the Spring of 2023. Plaintiffs also added claims that the new special event ordinance adopted on August 31, 2023 violated the United States and Utah Constitutions because (i) it allows for denial of an application if the applicant violated a law at a prior event, (ii) it allows for a ban if the applicant violated a law during a prior event, and (iii) appeals of decisions of the committee reviewing applications are heard by an Administrative Law Judge rather than the City Council. *See* Dkt. #111, Par. 107. Defendants have answered the portion of Plaintiffs' complaint related to

the Spring 2023 event and admitted that St. George City's denial of the permit violated the First Amendment as found by this Court in its Order on the preliminary injunction. Defendants, however, move for dismissal of Plaintiffs claims related to the Revised special Event Ordinance because they are not ripe.

Plaintiffs' claims based upon the Revised Special Events Ordinance are not ripe because Plaintiffs have not alleged they were denied a permit under this ordinance for any reason, let alone the three reasons they have alleged in their amended complaint. Not only have Plaintiffs not experienced any of the deficiencies they allege in their Amended Complaint, they have not alleged that any other permit applicant has experienced these deficiencies. Thus, Plaintiffs' allegations of shortcomings in the Revised Special Events Ordinance are mere speculation, and are not ripe for judicial review.

## STATEMENT OF UNDISPUTED FACTS

1. On March 3, 2023, Southern Utah Drag Stars filed an application for a special event permit from St. George City to host an event on April 28, 2023[1]:



---

[1] Dkt#34-7, DSTARS000045

SLC 7289810.3

The Permit Application expressly stated the event would not be a recurring event.

2. On March 16, 2023, the St. George City Council approved Ordinance No. 2023-03-003, which instituted a 6-month moratorium on the granting of new permits for special events on city property. This moratorium was set to expire on September 16, 2023.[2]

3. On March 31, 2023, St. George City sent Southern Utah Drag Stars a letter denying their March 3rd Permit. *See* March 31, 2023 Denial Letter.[3]

4. Southern Utah Drag Stars appealed. St. George City heard the appeal on April 11, 2023 and the St. George City Council affirmed the denial with a 4-1 vote.[4]

5. On May 23, 2023, Plaintiffs filed their Complaint in the present case. *See* Dkt. #1.

6. On May 30, 2023, Plaintiffs filed a motion for a preliminary injunction. *See* Dkt. #34.

7. On June 16, 2023, the Court entered a preliminary injunction requiring St. George City to allow Plaintiffs to hold their event on their chosen date (June 30, 2023) at one of two forums of their choice. *See* Dkt. #63.

8. On June 30, 2023, Plaintiffs held their event pursuant to the preliminary injunction order.

9. Around this same time, St. George City began working to revise its special event ordinance in order to address issues raised in the Court's preliminary injunction order.

10. Pursuant to the Utah Public Notice Website, St. George City issued public notices about city council work meetings on possible changes to the special event ordinance:

---

[2] *See* Ordinance No. 2023-03-003, DEF 224-22, Exh. 1
[3] Dkt#34-7, DSTARS000036
[4] 4.11.23 City Council Meeting Minutes, p. 2.

      a. May 25, 2023 – Discussion re use of GO bond for Town Square;

      b. June 8, 2023 – Discuss re: changes to Special Event Permit Code

      c. July 13, 2023 – Discussion re GO bond

      d. July 20, 2023 – Discussion re proposed changes to Special Events permit provisions

      e. August 17, 2023 – Discussion re proposed changes to Special Events permit provisions

      f. August 24, 2023 – Discussion re proposed changes to Special Events permit provisions.

11. Plaintiffs have not alleged that they appeared or provided any input to St. George City or any Defendants regarding the deficiencies they now allege are contained in the Revised Special Events Ordinance.

12. Following these public work meetings, on August 31, 2023, St. George City adopted a new special event permit ordinance and replaced it with a new ordinance. Importantly, the new ordinance:

    A. Does not contain any moratorium on special event permits application.

    B. Does not contain an advertising prohibition of any kind.

    C. Revamps the approval process by placing authority for approval or denial with the City Manager (§ 3-10-8) after review of the Events Review Committee, which is comprised of 13 city officials, including one member of the City Council, the police department, the fire department, the Special Events Coordinator, and the Parks Department (§3-10-4(b)). *See* Ordinance 2023-017, DEF 202-223, Exh. 2.

        D.      Revamps the appeal process so that appeals are now heard by an independent administrative law judge, rather than the City Council. *See Id.*, § 3-10-11. An applicant may appeal the administrative law judge's decision to the district court for the State of Utah. *See Id.*

14.    On September 27, 2024, more than a year after the Revised Special Events Ordinance was enacted, Plaintiffs moved for leave to amend their complaint to assert claims relating to the new ordinance. *See* Dkt. #109.

15.    On October 15, 2024, the Court granted Plaintiffs' motion for leave to file an amended complaint. *See* Dkt. #110.

16.    On October 28, 2024, Plaintiffs filed their amended complaint. *See* Dkt. #111. In their amended complaint, Plaintiffs assert the following deficiencies in the Revised Special Events Ordinance:

> 107. In response to this Court's injunction, Defendants revised the City Code provisions pertaining to special events permits. The new permitting scheme, which will apply to all future events applications Plaintiffs file in St. George, contains multiple new and substantial barriers to speech.
>
>     a.    The new Section 3-10-10 provides that applications for special event permits "may" be denied by the City under various circumstances, apparently without limiting the City's discretion to deny a permit on these bases. One of the circumstances under which the City "may" deny an application is: if "[t]he applicant or any person on whose behalf the application for a permit was made . . . [h]ad violations of state or local laws at a prior event" (the "Prior Violations Rule"). The Code provides no guidance as to what it means for an applicant to "ha[ve] violations . . . at a prior event." For example, it does not specify whether the violations must be based on the applicant's conduct (as opposed to the conduct of an attendee or vendor, for example) or on conduct that occurred during and on the premises of the event (as opposed to in connection with the event more generally), or whether the past violations must have been adjudicated. As written, the Prior Violations Rule arguably empowers Defendants to deny (or grant) a permit if an attendee at one of the applicant's prior events is alleged to have violated a parking ordinance when attending the event. Indeed, it appears that an anti-drag activist

could intentionally violate a law as an attendee at one of Plaintiffs' events, and thereby give Defendants limitless discretion to deny future permits to Plaintiffs at will.

      b.     The new Section 3-10-13 threatens to outright ban event organizers from applying for special event permits if "the permittee or attendees of the event" violate any "federal, state, or local laws during the course of the event" (the "Application Ban"). Indeed, the first time the organizer or any attendee is found to have violated any law, the Code provides that the event organizer "shall be barred from applying for another special event permit . . . for a period of two (2) years." And if there is a second violation of any law, the organizer "shall be permanently prohibited from applying for a special event permit." For Plaintiffs, whose entire business revolves around organizing events, such a ban would pose an existential threat.

      c.     Section 3-10-11 creates a new requirement that an applicant whose permit is denied must petition a municipal Administrative Law Judge—appointed and removable by Defendants —before they can seek relief in a state court. And it further instructs that court to presume that the Administrative Law Judge ruled correctly (the "ALJ Rule").

Dkt. #111, Par. 107.

17. Plaintiffs have not alleged that they have "[h]ad violations of state or local laws at a prior event" as required for the portion of the statute they complain of in Par. 107(a) to apply.

18. Plaintiffs have not alleged that they "or attendees of the event" violated any "federal, state, or local laws during the course of the event" as required for the portion of the statute they complain of in Par. 107(b) to apply.

19. Plaintiffs have not alleged that they have had an application for a special event denied under the New Special Event Ordinance, necessitating an appeal to an ALJ, as required for the portion of the statute they complain of in Par. 107(c) to apply.

20. Plaintiffs have not alleged that any event application has been denied for any of the reasons set forth in Paragraph 107 of their amended complaint.[5]

## STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that, if true, state a claim to relief that is plausible on its face." *Clinton v. Security Benefit Life Insur. Co.*, 63 F.4th 1264, 1274 (10th Cir. 2023) (citations omitted) (cleaned up). "[T]he complaint must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (Citations omitted) (cleaned up). "In reviewing an order granting a motion to dismiss, our role is like the district court's: we accept the well-pleaded facts alleged as true and view them in the light most favorable to the plaintiff, but need not accept threadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements, or allegations plainly contradicted by properly considered documents or exhibits. *Id.*, at 1275 (citations omitted) (cleaned up). "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Id.* (Citations omitted). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Id.* (Citations omitted). "Our task is to consider the complaint's allegations taken as a whole." *Id.* (Citations omitted). "Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion, but exceptions to this general rule include the following:

---

[5] Plaintiffs do not allege in their Amended Complaint that they have ever filed an application for an event under the Revised Special Event Ordinance; however, Plaintiffs submitted an on-line application for a special event to St. George City after 5:00 p.m. on October 22,2024, approximately 1 week before filing their Amended Complaint. As of the date of this filing, their application is being processed for approval by the Executive Review Committee pursuant to the Revised Special Event Ordinance. The proposed date of the event is December 7, 2024.

documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and 'matters of which a court may take judicial notice." *Id.* (Citations omitted) (cleaned up).

## ARGUMENT

### I. PLAINTIFFS' CLAIMS BASED ON THE NEW SPECIAL EVENT ORDINANCE ARE NOT RIPE.

"The ripeness doctrine involves both constitutional requirements and prudential concerns." *U.S. v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019) (citations omitted).

#### A. Constitutional Ripeness

"Constitutional ripeness is based on Article III's requirement that federal courts hear only "[c]ases" and "[c]ontroversies." *U.S. v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019) (citations omitted). "Because federal courts cannot give advisory opinions, the matter must come to the court in "clean-cut concrete form." *Id.* (citations omitted). "Article III standing requires the plaintiff to 'have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.' " *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020) (*quoting Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016)). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual and imminent, not conjectural or hypothetical." *Id.* (quotations omitted).

> ##### a. Plaintiffs have not suffered an Injury in Fact under the Revised Special Events Ordinance.

Plaintiffs have not suffered an injury in fact under the Revised Special Events Ordinance. The Revised Special Events Ordinance was enacted on August 31, 2023. Plaintiffs have not been

9

denied a permit based on any of the alleged deficiencies in their amended complaint – prior violations of law, bans for multiple violations of law, or disputes being resolved by an ALJ. Plaintiffs have not suffered any injury by application of the Revised Special Event Ordinance, and thus, their claims that it is unconstitutional are not ripe.

> ### b. *Plaintiffs have not suffered any injuries that are fairly traceable to the New Special Events Ordinance.*

Plaintiffs have not alleged any injury that is traceable to the Revised Special Events Ordinance. In fact, the provisions of the Revised Special Events Ordinance that Plaintiffs complain of <u>could not</u> be applied against Plaintiffs because they have not violated any state or local laws. Plaintiffs contend that an application could be denied on this basis; however, Plaintiffs have not alleged they have violated any such laws and, therefore, the ordinance could not apply against them. Similarly, Plaintiffs have not had an application denied, and, therefore, they have not appealed any such denial to an ALJ. Because Plaintiffs do not meet the pre-requisites (a violation and a permit denial) for the ordinance to be applied in the ways they complain of in their amended complaint, they have no injuries that are fairly traceable to the New Special Events Ordinance.

> ### c. *A Judicial Decision on the New Special Events Ordinance would be Speculative and Advisory.*

A judicial decision on the Revised Special Events Ordinance would be mere speculation. As set forth above, Plaintiffs have not had an application denied based on the deficiencies they allege in their amended complaint. In addition, Plaintiffs have not pled that they have committed any violations or had a permit denied such that the ordinance could be used against them in the way they allege. In fact, Plaintiffs have not alleged that the ordinance has been applied against

anyone (themselves or anyone else) in the way they complain of in the 15 months since it was enacted. Thus, a judicial decision on these items would be speculative and advisory.

### B. Prudential Ripeness

Even when an appeal satisfies Article III's "case or controversy" requirement, a court may still decline to review it under the prudential ripeness doctrine. Application of this doctrine turns on two factors: (1) "the fitness of the issue for judicial review," and (2) "the hardship to the parties from withholding review." *United States v. Bennett*, 823 F.3d 1316, 1326 (10th Cir. 2016); *see also Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). "As for whether the issue is fit for judicial review, we focus on whether the determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed." *United States v. Ford*, 882 F.3d 1279, 1283 (10th Cir. 2018) (internal quotation marks omitted). Thus, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (*quoting Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)). As for the hardship to the parties from withholding review, we consider whether a party "face[s] a direct and immediate dilemma." *Bennett*, 823 F.3d at 1327 (internal quotation marks omitted).

The factors for prudential ripeness also indicate this issue is not ripe. Plaintiffs' claim related to the Revised Special Events Ordinance rests upon contingent future events that may not occur as indicated or at all. Specifically,

- Plaintiffs have not alleged that they have "[h]ad violations of state or local laws at a prior event" as required for the portion of the statute they complain of in Par. 107(a) to apply.

11

- Plaintiffs have not alleged that they "or attendees of the event" violated any "federal, state, or local laws during the course of the event" as required for the portion of the statute they complain of in Par. 107(b) to apply.

- Plaintiffs have not alleged that they have had an application for a special event denied under the New Special Event Ordinance, necessitating an appeal to an ALJ, as required for the portion of the statute they complain of in Par. 107(c) to apply.

Not only have these circumstances not arisen in Plaintiffs' case, Plaintiffs have not alleged they have occurred to anyone else. Because none of the circumstances Plaintiffs have alleged would give rise to a constitutional infirmity have ever occurred, these claims are speculative and contingent upon future events that may never occur. Therefore, Plaintiffs' claims related to the New Special Event Ordinance are not ripe.

### C. Tenth Circuit Precedent

Tenth Circuit precedent makes clear that Plaintiffs' attempt to litigate the myriad of possibilities about how a future application will be treated is not ripe. In *United States v. Cabral*, 926 F.3d 687 (10th Cir. 2019), Mr. Cabral "allege[d] the risk-notification condition [of his supervised release] is unconstitutionally vague." *Id.*, at 694. Similarly, Plaintiffs argued in their motion for leave to file an amended complaint:

- "This provision is also vague, allowing for the unbridled discretion to deny permits that this Court previously found was unconstitutional." Mot., Dkt. #109, p. 4.

- "The provision is similarly unconstitutionally vague, as it does not provide a reasonable opportunity to understand what conduct is prohibited." *Id.*

In Mr. Cabral's case, the Tenth Circuit held that his claim was not ripe for two reasons. First, it held that "it would be virtually impossible to resolve Mr. Cabral's vagueness challenge without factual development." *Cabral*, p. 694. Similarly, there is no factual context for Plaintiffs' challenge to the Revised Special Events Ordinance. Plaintiffs have only recently submitted an application for a second permit, and it is being processed. Critically, it hasn't been denied based on any of the alleged constitutional infirmities they have alleged. Not only have Plaintiffs failed to allege the Revised Special Event Ordinance has been unconstitutionally applied against them, they have not alleged it has been unconstitutionally applied against anyone.

Second, Plaintiffs' claim related to the Revised Special Event Ordinance would require this Court to issue an opinion on situations that may never arise. In *Cabral*, the Tenth Circuit held:

> Even if we could resolve this pre-enforcement challenge as a pure question of law, our precedent strongly disfavors deciding challenges to supervised-release conditions that might never be applied. The doctrine of prudential ripeness "prevent[s] courts from entangling themselves in [such] abstract disagreements" without concrete application to guide their analysis. *Utah Republican Party v. Cox*, 892 F.3d 1066, 1092 (10th Cir. 2018) (quotation marks omitted). Even assuming a condition is facially problematic, "the mere existence" of a provision such as the risk-notification condition "is ordinarily not enough to sustain a judicial challenge, even by one who reasonably believes that the law applies to him and will be enforced against him." *New Mexicans for Bill Richardson*, 64 F.3d at 1499 (quoting *Nat'l Student Ass'n v. Hershey*, 412 F.2d 1103, 1110 (D.C. Cir. 1969)). Because the scenarios Mr. Cabral alludes to "may not occur as anticipated, or indeed may not occur at all," depending on the probation officer's future decisions, this challenge is not yet fit for judicial review. (*Texas*, 523 U.S. at 300, 118 S.Ct. 1257 (quoting *Thomas*, 473 U.S. at 580–81, 105 S.Ct. 3325)); *cf. Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) ("[A] regulation is not ordinarily considered ... 'ripe' for judicial review ... until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990))).

SLC 7289810.3

*Id.*, at 694. The Tenth Circuit then addressed the very issue at the core of Plaintiffs' claims related to the New Special Events Ordinance – it *may* be used to discriminate – noting:

> Mr. Cabral's risk-notification obligation—and thus, the "dilemma" whether to comply or challenge that obligation in court—arises only if his probation officer directs him to notify someone. Thus, Mr. Cabral does not currently face the sort of "direct and immediate dilemma" that would support judicial review. To be sure, the risk-notification condition as imposed by the district court vests Mr. Cabral's probation officer with exceptionally broad power, and Mr. Cabral convincingly articulates hypothetical scenarios in which his probation officer could use that broad power to infringe on Mr. Cabral's rights. But, as the Government observes, these scenarios "ha[ve] not yet occurred (and may never occur)." Response Br. at 8 (*quoting United States v. Davis*, 242 F.3d 49, 52 (1st Cir. 2001)). If Mr. Cabral's probation officer never invokes the risk-notification condition, then Mr. Cabral will never experience any hardship from the condition, whether or not we reach the merits of his challenge.

*Id.*, at 695-696. We do not know if the Revised Special Event Ordinance will ever be applied as Plaintiffs allege. Therefore, the claim would require the Court to wander into the murky territory of speculation and advisory opinions. This is squarely precluded by the doctrine of ripeness.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their partial motion to dismiss the claims in Plaintiffs' amended complaint based upon the Revised Special Events Ordinance enacted on August 31, 2023.

DATED this 11th day of November, 2024.

        SPENCER FANE LLP

        */s/ Scott Young*
        Scott Young
        *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 11th day of November, 2024, I electronically filed the foregoing **DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (CLAIMS RELATING TO REVISED SPECIAL EVENT ORDINANCE ENACTED ON AUGUST 31, 2023) AND SUPPORTING MEMORANDUM** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Annette Gamero