THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| SOUTHERN UTAH DRAG STARS, LLC, and MITSKI AVALOX,<br><br>                    Plaintiff,<br><br>v.<br><br>CITY OF ST. GEORGE,<br>COUNCILMEMBER JIMMIE HUGHES,<br>COUNCILMEMBER DANIELLE LARKIN,<br>COUNCILMEMBER NATALIE LARSEN,<br>COUNCILMEMBER GREGG MCARTHUR,<br>COUNCILMEMBER MICHELLE TANNER,<br>MAYOR MICHELE RANDALL, and CITY<br>MANAGER JOHN WILLIS,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER**<br>**GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br>**AND**<br>**GRANTING MOTION FOR ATTORNEYS' FEES**<br><br><br>Case No. 4:23-cv-00044-DN-PK<br><br>District Judge David Nuffer |

The parties entered a Settlement Agreement[1] regarding all claims and disputes in this case except for Plaintiffs' request for attorneys' fees and costs, which they agreed would be subject to further briefing.[2] Plaintiffs subsequently filed a motion seeking an award of attorneys' fees in the amount of $350,216.50 and costs in the amount of $902.00.[3] Defendants opposed the motion arguing that Plaintiffs are precluded from being the case's prevailing party under the

---

[1] Settlement Agreement, docket no. 139-3, filed under seal Mar. 21, 2025.

[2] Notice of Settlement, docket no. 121, filed Dec. 5, 2024.

[3] Plaintiffs' Motion for Attorneys' Fees and Costs, docket no. 129, filed Feb. 7, 2025.

Supreme Court's holding in *Lackey v. Stinnie*,[4] and that Plaintiffs requested attorneys' fees are unreasonable.[5]

In response to Defendants' argument regarding *Lackey*, Plaintiffs filed a motion seeking to enforce the parties' Settlement Agreement.[6] Plaintiffs argue that under the Settlement Agreement, they are the case's prevailing party and are entitled to recover their reasonable attorneys' fees and costs.[7] Defendants opposed the motion arguing that despite the Settlement Agreement's language identifying Plaintiffs as the case's prevailing party, *Lackey* is controlling.[8]

Because the parties agreed to resolve all claims and disputes in the case through their Settlement Agreement, and that Plaintiffs are the case's prevailing party, *Lackey* does not preclude Plaintiffs from recovering their reasonable attorneys' fees as the prevailing party. Therefore, Plaintiffs' Motion to Enforce Settlement Agreement[9] is GRANTED. And because Plaintiffs' requested attorneys' fees and costs are properly supported and reasonable, Plaintiffs' Motion for Attorneys' Fees and Costs[10] is GRANTED.

1    **CONTENTS**

2        DISCUSSION ............................................................................................................. 3
    2.1    The parties' agreement regarding the prevailing party within their Settlement Agreement is controlling.................................................................................. 3
    2.2    Plaintiffs' requested attorneys' fees and costs are reasonable. ........................... 7
        2.2.1    The hourly rates of Plaintiffs' counsel and paralegals are reasonable........ 8
        2.2.2    The billed hours of Plaintiffs' counsel and paralegals are reasonable...... 10
        2.2.3    Plaintiffs' requested costs are reasonable. ............................................. 17
3        ORDER ................................................................................................................... 17

---

[4] 604 U.S. 192 (2025).

[5] Defendants' Memorandum in Opposition to Plaintiffs' Motion for Attorneys' Fees ("Response to Motion for Attorneys' Fees"), docket no. 136, filed Feb. 28, 2025.

[6] Plaintiffs' Motion to Enforce Settlement Agreement, docket no. 137, filed Mar. 21, 2025.

[7] *Id.*

[8] Defendants' Memorandum in Opposition to Plaintiffs' Motion to Enforce Settlement Agreement ("Response to Motion to Enforce"), docket no. 144, filed Apr. 4, 2025.

[9] Docket no. 137, filed Mar. 21, 2025.

[10] Docket no. 129, filed Feb. 7, 2025.

## 2    DISCUSSION

### 2.1    The parties' agreement regarding the prevailing party within their Settlement Agreement is controlling.

On January 30, 2025, the parties entered a Settlement Agreement "to fully and finally resolve the claims raised in [this case] pursuant to the terms set forth in th[e] Settlement Agreement."[11] The parties acknowledged that they "underst[oo]d that they each may be waiving significant legal rights or claims by signing th[e] Settlement Agreement, and voluntarily enter[ed] into th[e] Settlement Agreement with the full and complete understanding of its terms and legal effect, and with the intent to be bound thereby."[12] The parties "acknowledge[d] that th[e] Settlement Agreement was entered into as a compromise and to avoid further controversy and cost of litigation."[13] And "in consideration for the relief provided" in the Settlement Agreement, the parties agreed to "release and forever discharge each other . . . from any and all claims, demands, liabilities, damages, causes of action, costs and expenses, including attorneys' fees (except as stated [in the Settlement Agreement]), arising out of [this case.]"[14]

The parties agree that their Settlement Agreement is a valid and enforceable contract.[15] However, they offer differing readings of its provision regarding attorneys' fees and costs.[16] The Settlement Agreement includes the following attorneys' fees provision:

> The [p]arties agree that [Plaintiffs are] the 'prevailing party' entitled to recover reasonable attorneys' fees and costs under 42 U.S.C. § 1988. The [p]arties further agree that any such petition for attorneys' fees may not seek fees incurred after the date of th[e] Settlement Agreement. The [p]arties further agree that, except as

---

[11] Settlement Agreement at 1, Recitals ¶ 4.

[12] *Id*. at 1, Recitals ¶ 5.

[13] *Id*. at 2, Agreement ¶ 5.

[14] *Id*. at 1, Agreement ¶ 2.

[15] Plaintiffs' Motion to Enforce Settlement Agreement at 5; Response to Motion to Enforce at 2-3.

[16] Plaintiffs' Motion to Enforce Settlement Agreement at 6-7; Response to Motion to Enforce at 3-4.

set forth in this Paragraph . . . [Defendants] ha[ve] retained, and ha[ve] not waived, any rights to contest or dispute [Plaintiffs'] alleged attorneys' fees.[17]

The plain language of this provision is clear and unambiguous—Plaintiffs are the prevailing party in this case and are entitled to recover their reasonable attorneys' fees and costs under § 1988. Defendants, nevertheless, argue that their retention of rights to contest and dispute Plaintiffs' alleged attorneys' fees permits them to challenge Plaintiffs' status as prevailing party.[18] This argument ignores the provision's plain language: "except as set forth in this Paragraph."[19]

Reading the attorneys' fees provision as a whole, the plain meaning of "except as set forth in this Paragraph" is clear and unambiguous. Defendants' retention of rights to contest Plaintiffs' alleged attorneys' fees does not apply to the parties' preceding agreements within that Paragraph, *i.e.*, that Plaintiffs are the case's prevailing party. Therefore, the Settlement Agreement precludes Defendants from challenging that Plaintiffs are the case's prevailing party and are entitled to recover their reasonable attorneys' fees and costs under 42 U.S.C. § 1988(b).

But even if the Settlement Agreement did not preclude Defendants' challenge to Plaintiffs' status as the prevailing party, Defendants' reliance on the Supreme Court's holding in *Lackey* is misplaced. In *Lackey*, the Supreme Court held that "[a] preliminary injunction, which temporarily preserves the parties' litigating positions based in part on a prediction of the likelihood of success on the merits does not render a plaintiff a 'prevailing party' [for purposes of obtaining an attorneys' fees award under § 1988(b)]."[20] Rather, "[a] party 'prevails' when a

---

[17] Settlement Agreement at 2, Agreement ¶ 6.

[18] Response to Motion to Enforce at 3-10.

[19] Settlement Agreement at 2, Agreement ¶ 6.

[20] 604 U.S. at 207.

4

court conclusively resolves [the party's] claim by granting enduring relief on the merits that alters the legal relationship between the parties."[21]

Plaintiffs obtained a preliminary injunction against Defendants in this case.[22] But that preliminary injunction is not the only basis on which Plaintiffs argue they are the case's prevailing party under § 1988(b). Plaintiffs' request for attorneys' fees is based on the Settlement Agreement in which the parties unambiguously agreed that Plaintiffs are the prevailing party and are entitled to recover reasonable attorneys' fees and costs under § 1988(b).[23] Unlike the temporary relief of a preliminary injunction, the Settlement Agreement is not a "transient victory at the threshold of an action, a fleeting success that did not establish that the plaintiff prevailed on the gravamen of [its] plea for injunctive relief, [or] one tentative in character, in view of the continuation of the litigation to definitively resole the controversy[.]"[24] Nor is the Settlement Agreement an "external event[] that moot[s] the action and prevent[s] the court from conclusively adjudicating" Plaintiffs' claims.[25]

The Settlement Agreement's plain and clear terms "fully and finally resolve the claims raised" in this case.[26] It requires Defendants to make a monetary payment to Plaintiffs[27] and to issue a public apology stating, in part:

> St. George City admits the permit denial violated [Plaintiffs'] First Amendment rights and publicly apologizes for violating [Plaintiffs'] First Amendment rights. St. George City regrets violating [Plaintiffs'] constitutionally protected right to

---

[21] *Id.*

[22] Memorandum Decision and Order Granting Preliminary Injunction, docket no. 63, filed June 16, 2023.

[23] Settlement Agreement at 2, Agreement ¶ 6; Plaintiffs' Motion for Attorneys' Fees at 4.

[24] *Lackey*, 604 U.S. at 203 (internal quotations and punctuation omitted).

[25] *Id.* at 207.

[26] Settlement Agreement at 1, Recitals ¶ 4

[27] *Id.* at 2, Agreement ¶ 3.

free speech, it strives to uphold the U.S. Constitution, and it has worked with [Plaintiffs] to favorably resolve the violation of [Plaintiffs'] rights.[28]

And the Settlement Agreement requires the parties to "release and forever discharge each other . . . from any and all claims, demands, liability, damages, causes of action, costs and expenses . . . arising out of [this case.]"[29] Its terms and provisions materially affect the parties' "legal rights or claims"[30] and are "binding upon, and inure to the benefit of the [p]arties and their respective heirs, personal representative, successors and assigns."[31]

The parties' Settlement Agreement is valid and enforceable.[32] And the result of the Settlement Agreement will be the entry of an order that is a final adjudication of Plaintiffs' claims in this case.[33] Such order (a dismissal with prejudice) will conclusively resolve Plaintiffs' claims and the parties' disputes by "granting enduring relief on the merits that materially alters the legal relationship between the parties."[34] Therefore, the Supreme Court's holding in *Lackey* supports, rather than precludes, Plaintiffs status as the case's prevailing party under § 1988(b).

Plaintiffs' Motion to Enforce Settlement Agreement[35] is GRANTED. Plaintiffs are the prevailing party in this case and are entitled to recover their reasonable attorneys' fees and costs under § 1988(b).

---

[28] *Id*. at 2, Agreement ¶ 4.

[29] *Id*. at 1, Agreement ¶ 2.

[30] *Id*. at 1, Recitals ¶ 5.

[31] *Id*. at 3, Agreement ¶ 12.

[32] Plaintiffs' Motion to Enforce Settlement Agreement at 5; Response to Motion to Enforce at 2-3.

[33] Settlement Agreement at 1, Agreement ¶ 2.

[34] *Lackey*, 604 U.S. at 207.

[35] Docket no. 137, filed Mar. 21, 2025.

### 2.2   Plaintiffs' requested attorneys' fees and costs are reasonable.

Plaintiffs seek an award of attorneys' fees in the amount of $350,216.50 and costs in the

amount of $902.00.[36] Plaintiffs' requests are supported by the declarations of counsel, which

identify counsels' experience, hourly rates, and billing entries for the work performed on this

case.[37] The requested attorneys' fees represent 1,111.80 in billed hours at hourly rates ranging

from $300 to $400 for licensed counsel; and between $110 to $150 per hour for counsel prior to

being admitted to the bar and paralegal work.[38] The requested attorneys' fees also represent a

substantial reductions to counsels' customary hourly rates and a substantial reduction in the

actual hours worked on the case by counsel and paralegals.[39] Plaintiffs' requested costs represent

the costs Plaintiffs incurred in filing the complaint and obtaining *pro hac vice* admissions.[40]

Defendants argue that Plaintiffs' requested attorneys' fees are unreasonable and should

be significantly reduced.[41] Specifically, Defendants argue that the hourly rates of Plaintiffs'

counsel is unreasonable when compared to the $285 hourly rate of Defendants' counsel.[42]

Defendants also argue that the number of hours Plaintiffs' counsel billed are excessive and

represent duplication of efforts, work on unsuccessful theories and non-legal tasks, and

non-compensable background legal research.[43] And Defendants argue that several of counsels'

---

[36] Plaintiffs' Motion for Attorneys' Fees and Costs at 2-3.

[37] Declaration of Rémi Jaffré ("Jaffré Declaration"), docket no. 130, filed Feb. 7, 2025; Declaration of Jason Groth in Support of an Award of Attorneys' Fees and Costs ("Groth Declaration"), docket no. 131, filed Feb. 7, 2025; Declaration of Emerson Sykes in Support of an Award of Attorneys' Fees and Costs ("Sykes Declaration"), docket no. 132, filed Feb. 7, 2025.

[38] Plaintiffs' Motion for Attorneys' Fees and Costs at 6-11.

[39] *Id.* at 6.

[40] *Id.* at 11.

[41] Response to Motion for Attorneys' Fees at 4-12.

[42] *Id.* at 4-5.

[43] *Id.* at 5-11.

billing entries are vague and implement improper block billing.[44] Defendants do not challenge the amount of costs that Plaintiffs request.

"The purpose of [42 U.S.C.] § 1988, is to ensure 'effective access to the judicial process' for persons with civil rights grievances."[45] "Accordingly, a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"[46] "Where a plaintiff has obtained excellent results, [the plaintiff's] attorney should recover a fully compensatory fee."[47] "Normally, this will encompass all hours reasonably expended on the litigation . . .[; a] fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."[48]

To determine a reasonable attorney's fee, a "lodestar" figure is arrived at "by multiplying the hours . . . counsel reasonably spent on the litigation by a reasonable hourly rate."[49]

### 2.2.1  The hourly rates of Plaintiffs' counsel and paralegals are reasonable.

The reasonableness of an hourly rate is determined by considering the "prevailing market rate for similar services by lawyers of reasonably comparable skill, experience, and reputation in the relevant community including experience in civil rights or analogous litigation."[50]

The declarations of Plaintiffs' counsel detail the skill and experience of each attorney for whom attorneys' fees are sought.[51] The law firm of Jenner & Block and the ACLU of Utah are

---

[44] *Id*. at 10-12.

[45] *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R.Rep. No. 9401558, p.1 (1976)).

[46] *Id*. (quoting S.Rep. No. 94-1011, p.4 (1976)).

[47] *Id*. at 435.

[48] *Id*.

[49] *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998) (internal quotations omitted).

[50] *Valdez v. Macdonald*, 66 F.4th 796, 836 (10th Cir. 2023) (internal quotations omitted).

[51] Jaffré Declaration ¶¶ 9-19 at 3-5; Groth Declaration ¶ 2 at 2, ¶¶ 5-8 at 2-4; Sykes Declaration ¶¶ 2-5 at 2.

highly reputable and well-known nationally for their legal work in civil rights litigation. Each of
the partners and senior-level associates and staff attorneys that performed legal work on this case
possess a high level of skill and numerous years of experience in civil rights and analogous
litigation. And the other associates and staff attorneys that performed legal work on this case
under their supervision possess a relatively high degree of skill and experience for the number of
years they have practiced law. The skill and experience of Plaintiffs' counsel was also clearly
demonstrated throughout the litigation in the quality of their court filings and their appearances
in court proceedings.

Defendants do not challenge the skill and experience of Plaintiffs' counsel. Nor do they
challenge the hourly rates billed for paralegal work. Rather, Defendants argue that out-of-state
counsels' reduction of their normal hourly rates is irrelevant to the prevailing rates in the
community, and that the reduced rates of Plaintiffs' counsel are excessive when compared to the
hourly rate of Defendants' counsel.[52] Defendants' arguments, however, ignore that the hourly
rates of Plaintiffs' out-of-state counsel were reduced to an amount consistent with the hourly
rates of Plaintiffs' in-state counsel.[53] These hourly rates (ranging from $300 to $400) are not
excessively disparate from the $285 hourly rate of Defendants' counsel.[54] They are supported by
counsels' declarations that the hourly rates are within the prevailing local rates.[55] And they fall
within the range of prevailing market rates for similar services by lawyers of reasonably

---

[52] Response to Motion for Attorneys' Fees at 4-5.

[53] *Compare* Jaffré Declaration ¶¶ 9-19 at 3-5; Groth Declaration ¶ 2 at 2, ¶¶ 5-8 at 2-4; Sykes Declaration ¶¶ 2-5 at 2.

[54] "[P]rivate attorneys often charge lower rates to the government because of counterbalancing benefits such as repeat business." *Case*, 157 F.3d at 1257 (internal quotations omitted). There is no evidence suggesting that this has occurred with the hourly rate of Defendants' counsel in this case. But this does not mean that the hourly rate of Defendants' counsel is the prevailing market rate in this community. Nor does it mean that any hourly rate above the rate of Defendants' counsel is excessive or unreasonable.

[55] Jaffré Declaration ¶ 21 at 6; Groth Declaration ¶¶ 6-10 at 2-4.

comparable skill, experience, and reputation in the Southern Utah community (which often draws from attorneys practicing out of the Salt Lake City, Utah area) based on the experience of this court in other similar litigation.

On this record, Plaintiffs have sufficiently demonstrated that their counsel and paralegals' hourly rates are reasonable and within the range of prevailing market rates for this community.

### 2.2.2  The billed hours of Plaintiffs' counsel and paralegals are reasonable.

Factors for determining the reasonableness of the hours billed for a given task or in the prosecution of the litigation as a whole include: the complexity of the case; the number of reasonable strategies pursued; the responses necessitated by the maneuvering of the other side; and the potential duplication of services.[56] Additionally, "[b]ecause not all hours expended in litigation are normally billed to a client, [counsel] should exercise billing judgment with respect to a claim of the number of hours worked."[57] "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended."[58]

Attorney billing hours may be adjusted by the district court if "the number of compensable hours claimed by counsel includes hours that were unnecessary, irrelevant[,] and duplicative."[59] Adjustment is also justified "if the attorney's time records are sloppy and imprecise and fail to document adequately how [the attorney] utilized large blocks of time."[60] And "the results obtained and the extent to which a party prevailed, may lead . . . to adjust[ment of] the fee upward or downward."[61]

---

[56] *Case*, 157 F.3d at 1250.

[57] *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998) (internal quotations omitted).

[58] *Case*, 157 F.3d at 1250.

[59] *Sheldon v. Vermonty*, 107 Fed. App'x 828, 834 (10th Cir. 2004) (internal quotations and punctuation omitted).

[60] *Id*. (internal quotations omitted).

[61] *Valdez*, 66 F.4th at 836 (internal quotations omitted).

However, "an overly particularized approach 'is neither practical nor desirable'" when determining the reasonableness of a requested attorneys' fees award.[62] "What *is* 'important is the discretionary determination by the district court of how many hours, in its experience, should have been expended on the specific case.'"[63] There is no requirement that each allowed or disallowed hour be identified and justified.[64] Nor is there any requirement to specify the number of hours permitted for each legal task.[65] Instead, a method of general allowance or reduction to the hours asserted may be implemented in order to achieve a reasonable number, "so long as there is sufficient reason for [the method's] use."[66]

Considering the factual and legal complexity of this case, including its time-sensitive aspects and necessities predicated by the legal maneuvering of Defendants; the work performed and the record; and the results obtained in relation to the relief sought, the billed hours of Plaintiffs' counsel and paralegals are reasonable.

Plaintiffs requested attorneys' fees consist of 1,111.80 billed hours.[67] The work performed for each of these billed hours is identified and detailed in the declarations of Plaintiffs' counsel.[68] Counsels' declarations also identify their efforts at billing judgment by: (1) cutting 245.75 billed hours (approximately 21%) from Jenner & Block attorneys and paralegals for whom attorneys' fees are requested;[69] (2) excluding all work performed by two

---

[62] *Sheldon*, 107 Fed. App'x at 834 (quoting *Case*, 157 F.3d at 1250).

[63] *Id.* (quoting *Case*, 157 F.3d at 1250) (emphasis in original)).

[64] *Id.*

[65] *Id.*

[66] *Id.* (internal quotations and punctuation omitted).

[67] Plaintiffs' Motion for Attorneys' Fees and Costs at 2-3.

[68] Jaffré Declaration at Exhibit A, docket no. 130-1, filed Feb. 7, 2025; Groth Declaration at Exhibit A, docket no. 131-1, filed Feb. 7, 2025; Sykes Declaration at Exhibit A, docket no. 132-1, filed Feb. 7, 2025.

[69] Jaffré Declaration ¶ 25 at 7.

11

Jenner & Block attorneys and three Jenner & Block paralegals;[70] (3) significantly reducing Emerson Sykes's billed hours from the actual number of hours he spent working on the case;[71] and (3) not requesting attorneys' fees for the work of several ACLU-National attorneys, including two supervising project directors, a senior staff attorney, and two post-graduate legal fellows.[72]

Despite counsels' appropriate exercise of billing judgment, Defendants argue that counsels' billed hours are unreasonably excessive and duplicative based on the number of substantive filings Plaintiffs made in the case and the number of attorneys that performed work on the case.[73] These arguments, however, fail to recognize the case's factual and legal complexity, which reasonably necessitated intensive fact investigation and strategy development, even before filing the complaint, as well as lengthy and detailed substantive filings that were time-sensitive.[74] Defendants' arguments also inaptly minimize the numerous billed hours that were reasonably necessary for strategizing, preparing for, attending, and finalizing the case's settlement. And numerous hours billed by Plaintiffs' counsel were reasonably necessitated to strategize regarding and respond to the legal maneuverings of Defendants, which included the filing of multiple dispositive motions and the St. George City Council's actions to repeal, amend, and enact City ordinances in response to the litigation as the case was ongoing.[75]

---

[70] *Id.*

[71] Sykes Declaration ¶ 7 at 2.

[72] *Id.* ¶ 8 at 2.

[73] Response to Motion for Attorneys' Fees at 5-10.

[74] *See e.g.* Complaint, docket no. 2, filed May 23, 2023; Notice of Motion and Motion for Preliminary Injunction, docket no. 34, filed May 30; Reply in Support of Motion for Preliminary Injunction, docket no. 59, filed June 13, 2023.

[75] *See e.g.* Plaintiffs' Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings, docket no. 73, filed Aug. 22, 2023; Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, docket no. 91, filed Jan. 26, 2024; First Amended Complaint, docket no. 111, filed Oct. 28, 2024.

Simply counting the number of substantive filings in the case, or considering its procedural stage out-of-context to the necessary demands of the litigation are not legitimate grounds for reducing the billed hours of Plaintiffs' counsel and paralegals. "[H]ours reasonably necessary for a lawyer to become familiarized with the facts and the law pertaining to the issue[s] to be argued" and to strategize for such argument are reasonably billed to clients and adversaries.[76] "Merely enumerating the number of attorneys working on a case is meaningless if unnecessary duplication of efforts is not shown."[77] Attorneys routinely meet with clients, review evidence, perform legal research of the issues, and strategize or collaborate with co-counsel multiple times when drafting pleadings, responding to dispositive motions, and preparing for settlement negotiations. And it is not uncommon for multiple co-counsel to be present at and bill for meetings, court hearings, and settlement negotiations. This is particularly true in complex litigation, such as this case, and it is attorney work that clients regularly compensate.

The billing records of Plaintiffs' counsel sufficiently identify, itemize, and detail the work performed and billed by the various counsel. Contrary to Defendants' arguments,[78] counsels' billing entries for addressing "strategy" are sufficiently detailed and precise without specifically identifying the strategies. And contrary to Defendants' arguments,[79] counsels' billing entries do not implement improper block billing. "Block billing" is an imprecise practice that refers to "the time-keeping method by which each lawyer and legal assistant enters the total daily

---

[76] *Flying J, Inc. v. Comdata Network, Inc.*, No. 1:96-cv-00066-BSJ, 2007 WL 3550342, *21 (D. Utah Nov. 15, 2007), aff'd, 322 Fed. App'x 610 (10th Cir. 2009) (quoting *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001)).

[77] *First Am. Title. Inc. Co. v. Nw. Title Ins. Agency, LLC*, No. 2:15-cv-00229-DN, 2017 WL 1456460, *13 (D. Utah Apr. 24, 2017), *aff'd*, 906 F.3d 884 (10th Cir. 2018).

[78] Response to Motion for Attorneys' Fees at 10.

[79] *Id*. at 11-12.

time spent working on a case, rather than itemizing the time expended on specific tasks."[80] None of counsels' billing entries constitute block billing. Each billing entry itemizes the time expended for the listed task or tasks. It is entirely permissible to include multiple tasks in a single itemized time entry. And in each instance Plaintiffs' counsel included multiple tasks in a single billing entry, the time expended was neither excessive nor unreasonable.

Counsels' billed hours also represent attorney work that was reasonably necessary to prosecute and settle the case. Defendants' argument that billing entries for untaken discovery and media responses to the parties' settlement are extraneous and non-legal work ignores the realities of the case.[81] The parties were in settlement discussions while ardently contesting dispositive motions for over a year prior to settling the case.[82] Under the circumstances, it was not unreasonable for Plaintiffs' counsel to prepare for discovery that ultimately was not taken due to the parties' settlement. The Settlement Agreement also included provisions for confidentiality and the issuance of a public apology,[83] which reasonably necessitated attorney work regarding public relations and media responses to the case's settlement. Ultimately, the hours Plaintiffs' counsel billed for specific tasks, and in the litigation as a whole, are not unreasonable, excessive, or duplicative given the case's factual and legal complexity and demands, including the legal maneuvering of Defendants.

The reasonableness of counsels' billed hours is further supported by the proper use of billing judgment,[84] and when considering the results obtained in relation to the relief Plaintiffs

---

[80] *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996), *cert. denied*, 519 U.S. 928 (1996)).

[81] Response to Motion for Attorneys' Fees at 10.

[82] Stipulated Motion to Stay at 2, docket no. 77, filed Oct. 3, 2023; Notice of Settlement.

[83] Settlement Agreement at 2, Agreement ¶¶ 3-4.

[84] Jaffré Declaration ¶ 25 at 7; Sykes Declaration ¶¶ 7-8 at 2.

14

sought. Plaintiffs' complaint sought redress for Defendants' alleged violation of Plaintiffs' First Amendment and Utah State constitutional rights, including: declaratory judgment that Defendants' special event licensing scheme, as implemented, violated Plaintiffs' rights; declaratory judgment that Defendants' discriminatorily violated Plaintiffs' rights; injunctive relief preventing Defendants' from discriminatorily enforcing City ordinances and permitting Plaintiffs' special event; damages; and attorneys' fees and costs.[85] Through the issuance of a preliminary injunction and as a result of the parties' Settlement Agreement, Plaintiffs substantially obtained the relief they sought in this case. Plaintiffs held a special event at a City park. The initially challenged City Ordinances were repealed and amended. Defendants have or will publicly apologize for violating Plaintiffs' First Amendment rights. Defendants have or will make a monetary payment to Plaintiffs. And Plaintiffs will receive an award of their reasonable attorneys' fees and costs. These are excellent results in relation to the relief sought, and Plaintiffs' counsel should recover a fully compensatory fee for Plaintiffs' success.[86] The quality of work from Plaintiffs' counsel was apparent in every disputed stage of the litigation. Defendants' unreasonable positions required more work than would have otherwise been required.

Defendants attempt to minimize Plaintiffs' success by pointing to the dismissal of certain relief sought by Plaintiffs, the dismissal of the St. George City Council, and the dismissal of certain claims against individual defendants.[87] Defendants, however, mischaracterize these dismissals as being based on unsuccessful theories.[88] The dismissal of the relief sought by

---

[85] Complaint at 41-42, Prayer for Relief ¶¶ 1-8; First Amended Complaint at 44-45, Prayer for Relief ¶¶ 1-8.

[86] *Hensley*, 461 U.S. at 435.

[87] Response to Motion for Attorneys' Fees at 9.

[88] *Id.*

15

Plaintiffs was based on mootness because Plaintiffs were permitted to hold a special event at a City park following the issuance of a preliminary injunction, and because the initially challenged City Ordinances were repealed in response to the litigation while the case was ongoing.[89] Plaintiffs successfully obtained the preliminary injunction that lead to their special event being held,[90] and Plaintiffs were permitted to continue to pursue relief for their alleged harm and potential future harms in relation to the newly enacted City Ordinances.[91] The dismissal of the St. George City Council was premised on Plaintiffs' concession because Defendants did not challenge that the denial of Plaintiffs' special event permit was attributable to the City of St. George.[92] And the dismissal of certain claims against individual defendants was not based on an unsuccessful theory, but rather because the relief Plaintiffs could obtain would be redundant to that obtained against the City of St. George.[93]

In context of the litigation as a whole, counsels' billed hours relating to each of these issues were reasonable and necessarily incurred. These dismissals do not diminish the overall success and excellent results obtained by Plaintiffs. And they do not warrant a reduction to the billed hours of Plaintiffs' counsel.

Therefore, based on the factual and legal complexity of this case, including its time-sensitive aspects and necessities predicated by the legal maneuvering of Defendants; the work performed and the record; and the results obtained in relation to the relief sought, Plaintiffs

---

[89] Memorandum Decision and Order Denying in part and Granting in part Defendants' Motion for Partial Summary Judgment on Plaintiffs' Claims for Injunctive and Declaratory Relief ("Summary Judgment Order") at 19-20, docket no. 102, filed Aug. 5, 2024.

[90] Memorandum Decision and Order Granting Preliminary Injunction.

[91] Summary Judgment Order at 10-19; First Amended Complaint.

[92] Memorandum Decision and Order Granting in part and Denying in part Motion for Judgment on the Pleadings at 2, 4, docket no. 95, filed Feb. 27, 2024.

[93] *Id*. at 2, 7.

16

have met their burden of establishing the reasonableness of the hours billed by Plaintiffs' counsel and paralegals. Plaintiffs are entitled to an award of their reasonable attorneys' fees in the amount of $350,216.50.

### 2.2.3 Plaintiffs' requested costs are reasonable.

Plaintiffs request of $902.00 in costs consists of the costs Plaintiffs incurred in filing the complaint and obtaining *pro hac vice* admissions.[94] Defendants do not challenge Plaintiffs' requested costs, and the costs are appropriately taxed to Defendants. Therefore, Plaintiffs are entitled to their costs in the amount of $902.00.

## 3   ORDER

IT IS HEREBY ORDERED that Plaintiffs' Motion to Enforce Settlement Agreement[95] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Attorneys' Fees and Costs[96] is GRANTED. Plaintiffs are awarded their reasonable attorneys' fees in the amount of $350,216.50, and costs in the amount of $902.00.

The parties are directed to file the necessary documents to resolve this case within 28 days after entry of this Memorandum Decision and Order.

Signed April 24, 2026.

BY THE COURT

David Nuffer
United States District Judge

---

[94] Plaintiffs' Motion for Attorneys' Fees and Costs at 11; Groth Declaration at Exhibit A at 5.

[95] Docket no. 137, filed Mar. 21, 2025.

[96] Docket no. 129, filed Feb. 7, 2025.

17